Filed 7/15/14  Parks Legal Defense Fund v. The City of Huntington Beach CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| PARKS LEGAL DEFENSE FUND et al., | |
| Plaintiffs and Appellants, | G048620 |
| v. | (Super. Ct. No. 30-2008-00051261) |
| THE CITY OF HUNTINGTON BEACH et al., | O P I N I O N |
| Defendants and Respondents. | |


Appeal from an order of the Superior Court of Orange County, Gail Andrea Andler, Judge.  Affirmed in part, reversed in part and remanded.  Request for judicial notice granted.

Claremont Land Group, Mark C. Allen and Geralyn L. Skapik for Plaintiffs and Appellants.

Kane, Ballmer & Berkman, Murray O. Kane, Guillermo A. Frias; Jennifer McGrath, City Attorney and John M. Fujii, Deputy City Attorney.

\*                 \*                 \*

In this litigation under the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.), defendants and respondents City of Huntington Beach (the city) and City of Huntington Beach City Council (the city council) filed a return to a peremptory writ of mandate and a motion seeking discharge of the writ. The court ordered the writ discharged. Plaintiffs and appellants Parks Legal Defense Fund and certain others (collectively, Parks) challenge the order, claiming the court had no jurisdiction to act. We disagree with the assertion that the court had no jurisdiction to consider the return and the motion and to discharge the writ. However, the court exceeded its jurisdiction in going beyond a determination of compliance with the writ, the judgment, and the prior decision of this court, and in determining whether the subsequent environmental impact report complied in all respects with CEQA. We affirm in part, reverse in part and remand.

I

FACTS

The city sought to construct a senior center in its Central Park. In furtherance thereof, the city adopted a resolution certifying a final environmental impact report (EIR) for the project and approving a conditional use permit (CUP). On March 4, 2008, Parks filed a petition for a writ of mandate challenging the city's actions, and asserting multiple causes of action (*Parks Legal Defense Fund v. The City of Huntington Beach* (Super. Ct. Orange County, 2009, No. 30-2008-00051261)) (Original Proceeding).

The superior court granted in part and denied in part the requested relief. The judgment, by its terms, decreed that the certification of the EIR and the issuance of the CUP were each vacated. It also remanded the matter to the city council for further consideration and ordered the preparation, circulation and consideration of "a subsequent Environmental Impact Report ('SEIR') addressing the suitability of alternative off-site locations which may reasonably become available to the City as a site for the proposed

2

project, including the public school property identified by the City of Huntington Beach in these proceedings."

In addition, the court issued a peremptory writ of mandate in which it ordered the city council to vacate the certification of the EIR, all actions by the city council taken with respect to the senior center in reliance on the EIR, and the issuance of the CUP. The writ further stated: "E. This Court shall retain jurisdiction over Respondents with respect to the Project by way of a return of this Writ until the Court determines that Respondents have adequately complied with the Writ. [¶] F. Respondents shall file a return to this Writ and serve it on all parties no later than 90 days after the date of the Writ's issuance . . . ." Finally, the court awarded attorney fees to Parks Legal Defense Fund, in an amount to be determined.

Each party appealed. The appeals were resolved in this court's prior opinion in *Parks Legal Defense Fund v. The City of Huntington Beach* (Dec. 13, 2010, G043109 [nonpub. opn.]) (the First Appeal). In that opinion, we held that both the certification of the EIR and the issuance of the CUP had to be set aside, and we affirmed the judgment except with respect to a time-barred declaratory relief action. We held the EIR was deficient for failure to discuss the availability of certain closed school cites as alternative locations and the loss of open space caused by the use of in-lieu fees to construct the senior center instead of to create more open space. In addition, we held that the project was inconsistent with the Central Park master plan's low intensity designation.

The city thereafter filed in the superior court a status conference statement dated April 22, 2011. In that statement, the city represented that a second appeal addressing attorney fees had been dismissed on April 15, 2011, following the stipulation of the parties in furtherance of a settlement agreement (*Laquer Urban Clifford & Hodge v. The City of Huntington Beach* (Apr. 18, 2011, G043943)) (Second Appeal). It further

3

stated that, pursuant to that settlement agreement, the parties would file a stipulation requesting the superior court to vacate the attorney fees award. In addition, it said: "Once the Court vacates the Attorney's Fee awards, the City requests that the Court close this case."

In that status conference statement, the city said that the judgment had effectively vacated the certification of the EIR and the issuance of the CUP. The city also noted that the judgment had directed it to prepare a subsequent EIR. The city represented that it had complied with that directive inasmuch as it had proceeded with the preparation of a supplemental EIR and a general plan amendment.[1] In conclusion, the city stated, "there is no basis for the Court to retain jurisdiction any longer over this Action."

A City of Huntington Beach Request for City Council Action prepared by the city attorney for the July 5, 2011 city council meeting said: "On May 20, 2011, the trial court stated that it would not relinquish its jurisdiction until the City Council complied with the Court of Appeal's opinion to set aside the certification of the EIR and the issuance of the CUP. The trial court set a hearing date of July 12, 2011, for the City Council to take these actions. If the City Council sets aside the certification of the EIR and issuance of the CUP, the trial court will relinquish its jurisdiction of this lawsuit. If the City Council fails to set aside the certification of the EIR and issuance of the CUP by the July 12, 2011, hearing the trial court will continue to maintain its jurisdiction of this lawsuit and most likely restrain the City from taking any action on the EIR and the CUP."

---

[1] The terms "subsequent EIR" and "supplemental EIR" are not interchangeable. There are some differences between the two. (See Cal. Code Regs., tit. 14, §§ 15162, 15163.) We observe that the city has been imprecise in its usage of the terms. In any event, the record reflects that the city prepared a "subsequent EIR" pursuant to California Code of Regulations, title 14, section 15162.

On July 5, 2011, the city council voted to set aside the certification of the EIR and the issuance of the CUP. The superior court thereafter held another status conference. Its July 12, 2011 minute order states in pertinent part: "Court deems the matter in compliance with the remand order and no further action is taken."

On May 18, 2012, Parks Legal Defense Fund and Lawrence Geisse commenced a new proceeding in the superior court (*Parks Legal Defense Fund v. The City of Huntington Beach* (Super. Ct. Orange County, No. 30-2012-00570541)) (the Second Proceeding). However, the city continued to pursue a resolution of the Original Proceeding.

The city filed, in the Original Proceeding, a February 15, 2013 return to the writ and a February 15, 2013 motion seeking an order discharging the writ. The city represented that it had vacated the certification of the EIR and the issuance of the CUP, prepared and adopted a supplemental EIR addressing the deficiencies identified in this court's opinion, amended the city's general plan to accommodate the higher intensity use of the senior center, and issued a new CUP. Having performed these tasks, the city argued that it had complied with the judgment, the writ and the decision of this court in the First Appeal and, thus, was entitled to have the writ discharged.

In support of its motion, the city filed a copy of a 1589-page administrative record. We observe that the record on appeal also contains copies of: (1) the portion of a transcript of the July 5, 2011 city council meeting dealing with the senior center; (2) a notice of a January 24, 2012 public hearing before the planning commission pertaining to the senior center SEIR, CUP, and general plan amendment; (3) the portion of a transcript of the January 24, 2012 planning commission meeting dealing with the senior center; (4) a January 25, 2012 planning commission notice of action pertaining to the senior center SEIR; (5) the portion of a transcript of an April 16, 2012 city council meeting dealing with the senior center; (6) the city council's Resolution No. 2012-18 certifying the final

5

SEIR for the senior center; (7) the city council's Resolution No. 2012-19 approving a general plan amendment with respect to the senior center; and (8) a Notice of Determination recorded on April 20, 2012 in the official records of Orange County, California as Instrument No. 201285000386, pertaining to senior center CEQA compliance.

Parks opposed the city's motion, arguing that the Original Proceeding was over and done with and the superior court had long since determined it had no further jurisdiction over the matter. It also asserted that the only reason the city was filing the motion in the Original Proceeding was that it was trying to avoid litigating various city actions, including the approval of an SEIR, in the Second Proceeding. In addition, Parks argued, inter alia, that the city still had failed to adequately address the previously identified problems with the EIR.

By order of May 6, 2013, the superior court in the Original Proceeding determined that it had jurisdiction to consider the SEIR pursuant to the terms of the judgment. It further found that the return adequately addressed the issues identified in the judgment, including the consideration of alternative sites, the use of Quimby Act funds and the loss of open space, and the CUP's conformity with the Central Park master plan. The court held that the senior center was then in compliance with CEQA and that the city was at liberty to issue the CUP. In addition, it ordered the writ discharged. Parks filed an appeal, resulting in the matter now before us (Case No. G048620) (Third Appeal).

The "First Amended Petition and Complaint" (some capitalization omitted) dated June 26, 2013 and filed in the Second Proceeding asserted, inter alia, that the SEIR violated CEQA for a litany of reasons and that the city violated section 612 of its own charter in approving the senior center project without a vote of the people. The city filed a demurrer. On October 3, 2013, the court in the Second Proceeding sustained the

6

demurrer and stayed the action pending the resolution of this Third Appeal.[2]

II

DISCUSSION

A. *First Topic—Jurisdiction:*

Parks' first topic heading reads:  "ONCE THE CITY UNEQUIVOCALLY VACATED ITS APPROVALS AND THE ORIGINAL TRIAL COURT JUDGE ISSUED A RETURN OF WRIT IN JULY 2011, CAN A SUBSEQUENT TRIAL COURT JUDGE RESURRECT JURISDICTION OVER THE PROJECT WHEN THE ORIGINAL TRIAL COURT JUDGE DID NOT RETAIN JURISDICTION AT THE TIME THE 2011 WRIT WAS RETURNED AND DISCHARGED?"  Parks then states that the answer to its question is "NO."

In its first argument, Parks both mischaracterizes the facts and demonstrates its misunderstanding of the function of a return to a peremptory writ of mandate in a CEQA action.  Parks says that, in response to the city's April 2011 request, *the superior court issued a return* to the writ in July 2011, that this constituted a discharge of the writ, and that the superior court thereupon lost jurisdiction to entertain any further matters pertaining to the Original Proceeding.  It also says that when the city filed its "*second Motion for Return*" in February 2013, the court had no jurisdiction to act upon it.  Parks concludes:  "All actions taken . . . relating to the second Return of Writ are therefore void."

First of all, we address mechanics and terminology.  The court enters a judgment directing the issuance of a writ.  The judgment should specify the terms of the

---

[2]	The city filed a request for judicial notice in this court, asking us to take notice of the October 3, 2013 Order re Motion re Hearing on Return and Compliance with Judgment/Writ of Mandate; and for Order Discharging the Writ of Mandate, filed in the Second Proceeding.  We hereby grant the unopposed request.  (Evid. Code, § 452, subd. (d).)

7

writ.  The clerk then prepares a writ in conformity with the judgment.  (*Endangered Habitats League, Inc. v. State Water Resources Control Bd.* (1997) 63 Cal.App.4th 227, 243-244.)

As stated in Public Resources Code section 21168.9, subdivision (b):  "The trial court shall retain jurisdiction over the public agency's proceedings by way of a return to the peremptory writ until the court has determined that the public agency has complied with this division."  This language does not mean that the court issues the return.  Rather, it is construed to mean that the court retains jurisdiction by requiring the public agency to file a return "informing the court of the agency's actions in compliance with the writ.  [Citations.]"  (*Ballona Wetlands Land Trust v. City of Los Angeles* (2011) 201 Cal.App.4th 455, 479.)  "This statutory provision for the retention of jurisdiction reflects the rule that a court issuing a peremptory writ of mandate retains jurisdiction to determine the adequacy of the return and ensure full compliance with the writ.  [Citations.]"  (*Ibid.*)  The issuance of a peremptory writ does not necessarily preclude either the filing of supplemental returns with respect to progress made or the entry of interim orders.  (*Id.* at p. 464; *Endangered Habitats League, Inc. v. State Water Resources Control Bd.*, *supra*, 63 Cal.App.4th at p. 243.)

Here, the judgment properly ordered the issuance of a peremptory writ of mandate.  And, the writ properly ordered the city to file a return and stated that the court would retain jurisdiction until such time as it was satisfied that the city had adequately complied with the writ.

Thereafter, the city filed a status conference statement in April 2011 in which the city argued that the judgment itself had effectively vacated the certification of the EIR and the issuance of the CUP, and that because the city had proceeded with the preparation of a supplemental EIR and a general plan amendment, there was no ground for the court to retain jurisdiction of the matter.  Even were we to construe this status

8

conference statement as a return to the writ, we would conclude, as it would appear the superior court did, that the city had not demonstrated full compliance with the writ. The writ directed the city to vacate both the certification of the EIR and the issuance of the CUP. It had done neither, so after the status conference, the city attorney placed before the city council a request for action on the matter.

After the city council vacated both the certification of the EIR and the issuance of the CUP, another status conference was held. However, there is no indication that the city filed a return to the writ in advance of that status conference. In its July 12, 2011 minute order, the court stated that it deemed "the matter in compliance with the remand order," but it neither discharged the writ nor dismissed the case.

Eventually, the city got around to filing both a return to the writ and a motion for discharge. Inasmuch as it appears that this was the first formal return that the city filed, and that the court had not previously ordered a discharge of the writ, the court had continuing jurisdiction to hear and pass upon the return. (*Ballona Wetlands Land Trust v. City of Los Angeles*, *supra*, 201 Cal.App.4th at pp. 479-480.) It also had continuing jurisdiction to enforce its judgment and to enforce compliance with this court's opinion in the First Appeal. (Code Civ. Proc., § 128, subd. (a)(4); *City of Carmel-By-The-Sea v. Board of Supervisors* (1982) 137 Cal.App.3d 964, 974.)

In arguing to the contrary, Parks misinterprets language found in *Ballona Wetlands Land Trust v. City of Los Angeles*, *supra*, 201 Cal.App.4th at page 480. There, the court stated: "We conclude that the trial court's retained jurisdiction under Public Resources Code section 21168.9, subdivision (b) is limited to ensuring compliance with the peremptory writ of mandate. After considering the petitioner's challenges to an EIR . . . and rendering a final judgment and peremptory writ of mandate, a trial court evaluating a return to the writ may not consider any newly asserted challenges arising from the same material facts in existence at the time of the judgment. To do so would

9

undermine the finality of the judgment." (*Ballona Wetlands Land Trust v. City of Los Angeles*, *supra*, 201 Cal.App.4th at p. 480.) Parks focuses on the first sentence of the quote and interprets it to mean that once a court has issued a peremptory writ, it has continuing jurisdiction limited *only* to ensuring compliance with the writ, to the exclusion of enforcing compliance with the judgment and any decision of the Court of Appeal. But that is not what the language says. The court in *Ballona Wetlands Land Trust v. City of Los Angeles*, *supra*, 201 Cal.App.4th 455 made clear that when addressing compliance with the peremptory writ, the superior court may not consider new challenges based on "material facts in existence at the time of the judgment." (*Id.* at p. 480.) The jurisdiction of the superior court to enforce either the judgment itself or a decision of the Court of Appeal was not at issue and the language of the opinion in *Ballona* did not curtail the authority of the superior court to enforce either one. The superior court, as we have said, has continuing jurisdiction to enforce both its judgment and the decision of the Court of Appeal. (Code Civ. Proc., § 128, subd. (a)(4); *City of Carmel-By-The-Sea v. Board of Supervisors, supra,* 137 Cal.App.3d at p. 974.)

Moreover, as *City of Carmel-By-The-Sea v. Board of Supervisors*, *supra*, 137 Cal.App.3d 964 makes clear, in passing upon compliance with a peremptory writ, the court is not required to consider the wording of the peremptory writ in a vacuum, without reference to the language of the judgment itself. (*Id.* at pp. 973-974.) Here, the judgment remanded the matter to the city council for further consideration and specifically ordered it "to prepare, circulate, and consider a subsequent Environmental Impact Report ('SEIR') . . . ." The court did not lose jurisdiction to enforce this portion of the judgment just because it was not reiterated in the body of the peremptory writ.[3]

---

[3]    We note that both the judgment and the peremptory writ were drafted by counsel for Parks.

*B. Second Topic—Jurisdiction Again:*

    *(1) Introduction—*

    Parks' second topic[4] heading reads: "CAN THE 2013 TRIAL COURT JUDGE RESURRECT JURISDICTION AND ISSUE A SECOND RETURN OF WRIT THAT INCORPORATES AND RULES ON CHALLENGES RELATING TO THE ADEQUACY OF THE SUBSEQUENT EIR?" Parks then states that the answer to its question is "NO." (Underscoring omitted.)

    *(2) Scope of Jurisdiction—*

    We have, in essence, already addressed this issue. As we stated above, a court does not issue a return and the superior court in this matter did not lose jurisdiction to act in the Original Proceeding. More specifically, it did not lose jurisdiction to enforce the writ, the judgment, and the opinion of this court in the First Appeal. That means it had the power to determine whether the SEIR complied with the judgment and this court's opinion. That does not mean, however, that the superior court had the jurisdiction to address every conceivable challenge to the SEIR, including challenges based on material facts not in existence at the time of entry of judgment. (Cf. *Ballona Wetlands Land Trust v. City of Los Angeles*, *supra*, 201 Cal.App.4th at p. 480.) Yet the language of the May 6, 2013 order could be construed as addressing more than just compliance with the writ, the judgment, and this court's opinion.

---

4    Parks also includes a topic heading stating: "THE CITY VACATED ITS APPROVAL AND THE CITY REPRESENTED THAT THE COURT HAD NO JURISDICTION." (Boldface and underscoring omitted.) However, this is a recitation of fact, not an argument. In any event, although the city had, at various points before it filed its return, expressed its own opinion that there was no reason for the court to maintain jurisdiction, it apparently came to realize that the court did indeed maintain jurisdiction and that the proper procedure was for it to file a return and request a discharge of the writ. It does not matter anyhow. The city's expression of opinion could not and did not divest the court of jurisdiction, and was not determinative of law.

11

The May 6, 2013 order reads in pertinent part:  "The Court has the jurisdiction to consider the Subsequent Environmental Impact Report prepared pursuant to the terms of the December 15, 2009 Judgment ('Judgment') in this action.  The Return adequately addresses the three issues of concern raised in the Judgment:  (1) Discussion and consideration of alternative sites; (2) The loss of open space and use of Quimby Act funds for the project; and (3) The Conditional Use Permit's ('CUP's') compliance with the Central Park master plan.  *Accordingly, it is ordered and decreed that the proposed senior center at issue in this action is now in compliance with* [*CEQA*].  *The Writ is hereby discharged and Petitioners may now issue the CUP.*"  (Italics added.)

The italicized language can be interpreted to mean that the court determined the proposed senior center complied with CEQA not only with respect to the enumerated issues, but also with respect to every conceivable issue arising under CEQA, whether or not predicated on material facts in existence at the time of entry of judgment.  Consequently, it is overbroad.  We affirm the order to the extent it holds that the writ has been satisfied and is discharged, and that the three identified issues have been adequately addressed.  The order is otherwise reversed.  On remand, the trial court shall issue a new and different order reading in pertinent part as follows:

"The Court has the jurisdiction to consider the Subsequent Environmental Impact Report prepared pursuant to the terms of the December 15, 2009 Judgment ('Judgment') in this action, in order to determine compliance with the Judgment.  The Return adequately addresses the three issues of concern raised in the Judgment:  (1) The discussion and consideration of alternative sites; (2) The loss of open space and use of Quimby Act funds for the project; and (3) The Conditional Use Permit's compliance with the Central Park master plan.  Accordingly, it is ordered and decreed that the Subsequent Environmental Impact Report adequately addresses the issues identified in the Judgment.  The Writ has been complied with and is hereby discharged."

*(3) Other arguments—*

Interestingly, we observe that Parks' discussion under the above-referenced topic heading actually has little if anything to do with its stated topic. However, to the extent issues not falling within the ambit of the stated topic are strewn about the discussion under that topic heading, we need not address them. It is well settled that the "appellant's brief 'must' '[s]tate each point under a separate heading or subheading summarizing the point . . . .' [Citations.] This is not a mere technical requirement; it is 'designed to lighten the labors of the appellate tribunals by requiring the litigants to present their cause systematically and so arranged that those upon whom the duty devolves of ascertaining the rule of law to apply may be advised, as they read, of the exact question under consideration, instead of being compelled to extricate it from the mass.' [Citations.]" (*In re S.C.* (2006) 138 Cal.App.4th 396, 408; accord, *Evans v. Centerstone Development Co.* (2005) 134 Cal.App.4th 151, 166.) Accordingly, we treat as waived any argument not contained under a separate heading or subheading. (*Conservatorship of Hume* (2006) 139 Cal.App.4th 393, 395, fn. 2; *Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830-1831, fn. 4.)

In addition, arguments that are not supported by citation to the record or to legal authority are deemed waived.[5] (*Schubert v. Reynolds* (2002) 95 Cal.App.4th 100, 109.) Parks has made several such unsupported arguments and they are deemed waived for this additional reason also.

*C. Third Topic—City's Failure to Comply With Writ:*

Parks' final topic heading reads: "THE CITY HAS STILL FAILED TO ADEQUATELY ADDRESS THE ISSUES IN THE PRIOR WRIT." (Boldface and

---

[5] Similarly, Parks would do well to note that we do not address issues raised for the first time in the reply brief. (*Schubert v. Reynolds*, *supra*, 95 Cal.App.4th at p. 108.)

underscoring omitted.)  Under this topic heading, Parks asserts that the city, in the SEIR, failed in various respects to comply with the directives of the writ.  This, as the city points out, is a curious assertion inasmuch as Parks elsewhere in its opening brief maintains that once the city had vacated its approvals associated with the senior center project, it had "completely complied with the writ," and thus deprived the court of further jurisdiction.  Furthermore, in its opening brief Parks states unequivocally:  "The Peremptory Writ of Mandate does not command the Respondent to prepare a 'Subsequent' EIR."  So how could the purported failure to address certain issues in its SEIR be a failure to comply with the writ itself?

Inconsistencies aside, perhaps what Parks meant to argue under its third topic heading was that, even if the court had continuing jurisdiction, it erred in finding that the city had adequately addressed the issues of concern raised in the judgment.  However, in the discussion under the third topic heading, Parks provides a solitary page reference—to the writ itself.  Parks cites no portion of the record pertaining to the purportedly faulty SEIR.  In addition, Parks does not provide a single citation to legal authority in support of its arguments under this topic heading.  Parks' arguments on this topic are waived for failure to provide citations to either the record or legal authority in support of its point.[6]  (*Schubert v. Reynolds*, *supra*, 95 Cal.App.4th at p. 109.)

III

DISPOSITION

The order is affirmed in part, reversed in part, and remanded.  On remand, the superior court shall vacate its May 6, 2013 order and enter a new and different order

---

[6]     As an aside, we note that Parks has commenced litigation and pursued this appeal because of the purported failure of the city to comply with technical requirements—those pertaining to CEQA laws and writ compliance.  However, ironically enough, in pursuing its appeal, Parks itself has failed to follow technical rules—those pertaining to appellate procedure.

14

as specified herein. In the interests of justice, each party shall bear its own costs on appeal.

MOORE, J.

WE CONCUR:

O'LEARY, P. J.

IKOLA, J.