Filed 10/23/24  In re O.G. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| In re O.G., a Person Coming Under the Juvenile Court Law. | C100827 |
| SHASTA COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>H.W.,<br><br>Defendant and Appellant. | (Super. Ct. No. 22JV3234601) |

Mother of minor O.G. appeals from the juvenile court's orders terminating parental rights and freeing the minor for adoption.  (Welf. & Inst. Code, §§ 366.26, 395; undesignated statutory references are to the Welfare and Institutions Code.)  She contends the initial inquiry under the Indian Child Welfare Act (ICWA) by the Shasta County Health and Human Services Agency (Agency) was insufficient because the Agency failed

1

to contact specified relatives to inquire whether they knew of possible Native American ancestry.  (25 U.S.C. § 1901 et seq.; § 224.2.)  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In July 2022, the Agency filed a juvenile dependency petition alleging that the three-year-old minor came within section 300, subdivisions (b)(1) and (j).  Initial inquiries of mother gave no reason to believe the minor may be an Indian child.  Mother signed and filed a parental notification of Indian status (ICWA-020) form denying Indian ancestry.  The juvenile court asked mother and the maternal grandmother at the detention hearing if they had any Indian ancestry, and both denied any Indian ancestry.  In August 2022, father also submitted an ICWA-020 form denying Indian ancestry.

The Agency's disposition report stated that both parents had reported no Indian ancestry, but father had indicated he had "a few cousins with Indian Ancestry but he wasn't sure what tribe."  Twelve maternal relatives had been located and sent relative notification letters.  Family finding for father was still pending.  Father had provided a few family member names and some phone numbers.  The Agency stated it would continue family finding efforts and continue to investigate possible Indian ancestry.  At the September 2022, disposition hearing, the juvenile court made an ICWA-related inquiry of mother, father, maternal grandmother, and paternal grandmother, and all four denied any known Indian ancestry.  The juvenile court found that the "Indian Child Welfare Act is pending."

At the March 2023, review hearing, the juvenile court again found that the ICWA was pending verification.

On September 8, 2023, the Agency filed an addendum to its 12-month review report that outlined the efforts the Agency had undertaken to locate extended family and inquire about possible Indian ancestry.  The addendum described prior parent reports of no Native American ancestry and prior court findings.  The addendum stated that, in October 2022, the family finding department sent relative information letters with "the

2

Important Information for Relatives pamphlet and the JV-285 Relative Information form" to the 20 known maternal and paternal relatives. The addendum provides the addresses it used to contact the relatives and describes the responses it received. If no response was documented, no response had been received.

Of note in the addendum, on September 5, 2023, social worker Hodson had sent ICWA inquiry letters to the 20 known relatives. The addendum did not describe the content of the ICWA inquiry letters or attach an inquiry letter. The addendum again provides the addresses it used to contact the relatives, some of which had been updated. No responses had been received at the time of the addendum report.

The addendum concluded that, based on the above-described efforts, the Agency "was not given any information from family members to support that the child may be an Indian child." It also stated, "No tribes were named as no readily available relatives indicated there was any Indian ancestry."

Also in the month the addendum was filed, September 2023, father again submitted an ICWA-020 form denying Indian ancestry.

The juvenile court found there was no reason to believe the ICWA applies, and it continued the ICWA proceedings to October 27, 2023.

At a hearing held on October 27, 2023, both mother and the maternal grandmother told the court that there were no changes as to whether the minor is an Indian child. The juvenile court found that there was no reason to believe or know that the ICWA applies, signed findings and orders that the Agency had made all efforts to obtain familial history, including contacting or attempting to contact the parents and/or available relatives, and had submitted the information and notice to the appropriate tribes, Bureau of Indian Affairs and Secretary of the Interior, pursuant to section 224.2.

On February 16, 2024, the juvenile court again asked mother, father, the maternal grandmother, and the paternal grandmother if they had any reason to believe the minor may have any Indian ancestry, and they each denied that they had any reason to believe

she had such ancestry. At the March 19, 2024, section 366.26 hearing, mother's counsel confirmed for the court that there had been no change to the information mother previously provided related to the ICWA. Father's counsel, the maternal grandmother, and the paternal grandmother also reported no change to any of the ICWA-related information. The juvenile court found that the ICWA does not apply and terminated parental rights.

Mother appeals. This matter was fully briefed in this court on August 22, 2024.

DISCUSSION

The ICWA defines an " 'Indian child' " as a child who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).) "Under ICWA's state analogue, the California Indian Child Welfare Act (Cal-ICWA . . .), courts and child welfare agencies are charged with 'an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child' in dependency cases." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1124.) "First, from the [Department]'s initial contact with a minor and his [or her] family, [section 224.2] imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the [Department] 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id*., subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply. (See § 224.2, subd. (c) [court is obligated to inquire at the first appearance whether anyone 'knows or has reason to know that the child is an Indian child']; *id*., subd. (d) [defining circumstances that establish a 'reason to know' a child is an Indian child]; § 224.3 [ICWA notice is required if there is a 'reason to know' a child is an Indian child as defined under § 224.2, subd. (d)].)" (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)

4

We review claims of inadequate inquiry into a child's Native American ancestry for substantial evidence.  (§ 224.2, subd. (i)(2); *H.A. v. Superior Court* (2024) 101 Cal.App.5th 956, 961; *In re Dezi C.*, *supra*, 16 Cal.5th at pp. 1131, 1134.)  "[T]he juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review."  (*Dezi C.*, at p. 1141.)  " 'On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case.  However, the less developed the record, the more limited that discretion necessarily becomes.' "  (*In re Kenneth D.* (2024) 16 Cal.5th 1087, 1101-1102.)

Mother contends that the Agency failed to conduct an adequate initial inquiry into whether the minor has Native American heritage because it failed to attempt to contact several members of minor's extended family.  She relies on section 224.2, former subdivision (b), which provides:  "If a child is placed into the temporary custody of a county welfare department pursuant to Section 306 or county probation department pursuant to Section 307, the county welfare department or county probation department has a duty to inquire whether that child is an Indian child.  Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled."

Mother contends the Agency should have, but failed to, make reasonable efforts to inquire about possible Native American ancestry from the following relatives: (1) mother's great-aunt and mother's cousin with whom the minor had been placed on July 26, 2022; (2) father's sister, identified as Heather R.; and (3) father's cousin with whom he was living at the time of disposition.  We address the contention as to each of these relatives.

5

Mother contends the Agency did not attempt to contact her great-aunt and cousin, whose names mother states are unknown, but with whom the minor had been placed on July 26, 2022. The record contradicts this contention. In the relative placement section of the Agency's disposition report, the social worker stated (after noting the minor was placed with the maternal great-aunt and cousin) that she had "further discussion regarding [the minor] with the Cousin Brandy when she called about concerns surrounding visits with the father. Caregiver expressed more concerns about . . . [and then lists multiple caregiver concerns]." The list of relatives to whom the Agency sent the ICWA letters includes "[M.M.], Great Aunt (Maternal)" and "Brandy M[.] Cousin (Maternal)," and the address provided for these two relatives is the same address. Thus, the record establishes that the Agency sent mother's great-aunt and cousin inquiry letters about the minor's possible Indian ancestry.

Mother also contends the Agency did not attempt to contact father's sister, identified as Heather R., "by phone or email" regarding possible Native American ancestry. Mother does not further develop this argument. To the extent mother intends to concede that the Agency did send father's sister a letter inquiring about possible Indian ancestry but contends only that she was not contacted "by phone or email," we reject her contention that the juvenile court could not find the Agency's efforts reasonable in this regard. To the extent mother is arguing the Agency did not send father's sister an ICWA inquiry letter, a reasonable reading of the record contradicts this contention. Father referred to his sister as Heather R. and reported she lived near the paternal grandmother. The Agency reported it sent an ICWA inquiry letter to Heather G. (same surname as father), who it identified as the paternal aunt, and whose mailing address is near the address listed for the paternal grandmother. Thus, a reasonable reading of the record permits the conclusion that "Heather [R.]" and "Heather [G.]" is the same individual – father's sister – and that the Agency attempted to contact her.

Mother also contends the Agency should have attempted to contact father's cousin with whom he was living at the time of disposition. Neither mother nor the record, however, provides the identity of this cousin. Father's address on the disposition reports (and preceding and subsequent reports) is listed as "whereabouts unknown" and lists only a phone number. Notice of the hearing was given in person to father at that time. It is not apparent that the Agency ever had that address to send an ICWA letter to that cousin, even assuming that cousin still resided at that address. Nor does the record indicate the Agency knew the identity of, or other contact information for, this unidentified cousin. Indeed, it is possible that this cousin is one of the cousins to whom the Agency *did* send an ICWA letter. Two paternal relatives who were sent letters were identified only as a "[r]elative." However, the record *does* reflect that the Agency sent ICWA inquiry letters to *all* known paternal relatives. Thus, we conclude that the juvenile court's finding that the Agency complied with the ICWA inquiry requirements was supported by substantial evidence. (See *In re Dezi C.*, *supra*, 16 Cal.5th at p. 1141.)

Mother also contends that the list of relatives contacted described only whether the relative was from the paternal or maternal side of *minor's* family, not whether the relatives were from the paternal or maternal side of the *parents'* families. She further contends there was no evidence that relatives were contacted from certain sides of parents' families. But the Agency here attempted to contact *all* available relatives. The record does not reflect that the Agency was aware of the existence and/or identity of any additional available relatives on either mother's or father's side. Thus, its failure to identify to which side of each parents' family the relatives belong does not impact the reasonableness of its inquiry.

Finally, we also reject mother's undeveloped argument that the Agency failed to adequately describe the ICWA inquiry letter it sent to relatives or attach a copy to the addendum to the report. She asserts in her reply brief that the Agency did not address this contention in its brief. This contention, however, was not developed in mother's

opening brief.  Instead she mentioned in passing, "[t]he addendum did not describe the contents of the ICWA inquiry letters, and the report did not attach an inquiry letter" in the middle of a paragraph under a heading asserting "The Agency Had Contact with, and Apparent Ready Access to, Extended Family Members and Persons Who Had an Interest in [the minor], But the Agency Did Not Interview or Attempt to Interview Them, and It Did not Interview Anyone on the Paternal Side of Father's Family or the Paternal Side of Mother's Family."  (Bolding omitted.)  She also mentioned in passing and under this same heading, that the relative information letter sent earlier was also not described or attached to the addendum.  She made no argument, provided no authority, and undertook no analysis regarding any obligation of the Agency to describe or attach a copy of these letters under this heading.

Under a subsequent heading in the opening brief entitled, "Since There Was Not Documentation of An Adequate and Proper Inquiry by the Agency, the Court Erred in Finding ICWA Does Not Apply and the Agency's Inquiry Was a Proper and Adequate Inquiry," (bolding omitted) mother provides general statements of law with no meaningful analysis or mention of the letters the Agency sent to the relatives.  It is not until mother's reply brief that mother assigns to the Agency a duty to describe the letters it sent or attach them to its report under California Rule of Court, rule 5.481(a)(5).

We do not consider underdeveloped arguments (*People v. Freeman* (1994) 8 Cal.4th 450, 482, fn. 2) or arguments raised for the first time in reply (*People v. Tully* (2012) 54 Cal.4th 952, 1075).  The lack of clarity surrounding her argument is a result of her failure to make a distinct argument under a separate heading or subheading summarizing the point, as required under California Rules of Court, rule 8.204(a)(1)(B). "This is not a mere technical requirement."  (*In re S.C.* (2006) 138 Cal.App.4th 396,. 408.)  It is designed so that we may be advised " 'of the exact question under consideration, instead of being compelled to extricate it from the mass.' "  (*Ibid.*)  Had mother developed her argument under a proper heading, it may have clarified her

8

contention.  Because she failed to do so, however, we find she forfeited this argument.[1]

(*Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830, fn. 4.)

DISPOSITION

The orders terminating parental rights are affirmed.

/s/
Mesiwala, J.

We concur:

/s/
Robie, Acting P. J.

/s/
Wiseman, J.[*]

---

[1]     Likewise, we deem forfeited further arguments that were neither developed nor set forth under an appropriate heading.

For example, mother acknowledges that the Agency performed a "family finding." But then mother states in passing that the Agency did not affirmatively establish that it attempted to gather information about father's paternal side from either father or the paternal grandmother (who were, according to the Agency, the only two family members on father's side with whom it had actual contact, so it is reasonable to assume they were the source of the information about the six identified paternal relatives).

As another example, mother cites the following as a "weakness" but does not assign error:  ICWA letters had been sent out only three days before the the addendum was prepared, which is not enough time for relatives to have responded.  But the Agency would have had to follow-up on any responses.  And the court continued to inquire about any changes.  And the section 366.26 hearing and final determination that the ICWA did not apply occurred six months after the addendum.

[*] Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.