Filed 11/26/14  P. v. Tolliver CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C072956 |
| Plaintiff and Respondent, | (Super. Ct. No. 09F02600) |
| v. | |
| DION DAMETRICE TOLLIVER, | |
| Defendant and Appellant. | |

Convicted of numerous counts of sexual abuse of children, defendant Dion Dametrice Tolliver appeals.  He contends:  (1) admission of evidence concerning child sexual abuse accommodation syndrome (CSAAS) violated his due process rights; (2) CALCRIM No. 1193 erroneously permitted the jury to use CSAAS evidence to evaluate the victims' credibility; (3) there was insufficient evidence to support a conviction for penetration of an unconscious person with a foreign object; (4) a multiple-victim finding was statutorily unauthorized; (5) cumulative prejudice requires reversal;

1

and (6) the sentence as to two counts must be modified. Only the last contention has merit; therefore, we modify the judgment and affirm it as modified.

BACKGROUND

Defendant, who was born in 1976, raped S.T. in February 1998, when she was 14 years old. He also penetrated her vagina with his finger when she was asleep.

In 2006 and 2007, when D.H. was 11 and 12 years old, defendant repeatedly touched her chest, raped her, sodomized her, and orally copulated her.

In 2007 or 2008, when D.P. was 14 or 15 years old, defendant touched her buttocks and vagina.

In 2009, when T.H. was seven years old, defendant put his fingers in her vagina.

The trial court found true that defendant was previously convicted of making a criminal threat (1998), possession of cocaine (2000), and possession of a firearm by a convicted felon (2004). The criminal threat conviction was a prior strike, making this a second strike case.

Defendant was convicted by jury of 16 counts of sexual abuse. The following list reflects the victim, crime, and second strike sentence as to each count.

| Count | Victim | Crime | Sentence |
|---|---|---|---|
| 1 | S.T. | Rape (§ 261, subd. (a)),[1] two or more victims (§ 667.61, subd. (e)(4)) | 30 years to life |
| 2 | S.T. | Penetration of unconscious person with foreign object (§ 289, subd. (d)), two or more victims (§ 667.61, subd. (e)(4))[2] | 16 years |
| 3 | D.P. | Lewd act on a child (§ 288, subd. (c)(1)) | 1 year 4 months |
| 4 | D.P. | Lewd act on a child (§ 288, subd. (c)(1)) | 1 year 4 months |

---

[1] Unspecified statutory references are to the Penal Code.

[2] The multiple-victim allegation was included in the jury verdict but was not included in the judgment. See part IV of the Discussion.

| 5 | D.H. | Lewd act on a child (§ 288, subd. (a), two or more victims (§ 667.61, subd. (e)(4)) | 30 years to life |
|---|------|-----------------------------------------------------------------------------|------------------|
| 6 | D.H. | Lewd act on a child (§ 288, subd. (a), two or more victims (§ 667.61, subd. (e)(4)) | 30 years to life |
| 7 | D.H. | Lewd act on a child (§ 288, subd. (a), two or more victims (§ 667.61, subd. (e)(4)) | 30 years to life |
| 8 | D.H. | Lewd act on a child (§ 288, subd. (a), two or more victims (§ 667.61, subd. (e)(4)) | 30 years to life |
| 9 | D.H. | Rape of a child (§ 269, subd. (a)(1), two or more victims (§ 667.61, subd. (e)(4)) | 30 years to life |
| 10 | D.H. | Lewd act on a child (§ 288, subd. (a), two or more victims (§ 667.61, subd. (e)(4)) | 6 years, stayed |
| 11 | D.H. | Sodomy on a child (§ 269, subd. (a)(3) | 30 years to life |
| 12 | D.H. | Lewd act on a child (§ 288, subd. (a)) | 6 years, stayed |
| 13 | D.H. | Rape of a child (§ 269, subd. (a)(1), two or more victims (§ 667.61, subd. (e)(4)) | 30 years to life |
| 14 | D.H. | Lewd act on a child (§ 288, subd. (a), two or more victims (§ 667.61, subd. (e)(4)) | 6 years, stayed |
| 15 | T.H. | Oral copulation of a child (§ 288.7, subd. (b)), two or more victims (§ 667.61, subd. (e)(4)) | 30 years to life |
| 16 | T.H. | Lewd act on a child (§ 288, subd. (a), two or more victims (§ 667.61, subd. (e)(4)) | 6 years, stayed |

The court imposed the unstayed terms consecutively and also imposed an additional 45 years for the prior strike (criminal threats) (§ 667, subd. (a)) and 2 years for prior prison terms (§ 667.5, subd. (b)). The aggregate term imposed was a determinate term of 65 years 8 months, followed by an indeterminate term of 270 years to life in state prison.

## DISCUSSION

## I

### Child Sexual Abuse Accommodation Syndrome

The trial court admitted expert testimony concerning CSAAS. Defendant contends that admission of this expert testimony violated his due process and fair trial rights. As many California cases have held, this contention is without merit.

3

CSAAS evidence is admissible in California to dispel jurors' misconceptions about how child victims of sexual abuse typically react. (See, e.g., *People v. Brown* (2004) 33 Cal.4th 892, 905-907; *People v. Wells* (2004) 118 Cal.App.4th 179, 188; *People v. Housley* (1992) 6 Cal.App.4th 947, 955; *People v. Archer* (1989) 215 Cal.App.3d 197, 205, fn. 2; *People v. Bowker* (1988) 203 Cal.App.3d 385, 393-394.)

As defendant acknowledges, California precedent holds that admission of CSAAS evidence does not violate a defendant's due process and fair trial rights. (*People v. Patino* (1994) 26 Cal.App.4th 1737 (*Patino*).) The *Patino* court rejected a claim that the defendant's "right to due process was violated by the introduction of CSAAS testimony. The United States Supreme Court has held the admission of relevant evidence of the battered child syndrome does not violate the due process clause of the Fourteenth Amendment. (*Estelle v. McGuire* (1991) 502 U.S. 62[, 68-70] [116 L.Ed.2d 385, 396-397].) Battered child syndrome evidence is analogous to CSAAS evidence. (*People v. Bowker, supra,* 203 Cal.App.3d at pp. 393-394.) For this reason, there can be little doubt the due process dimensions of both types of evidence is similar if not identical. Therefore, introduction of CSAAS testimony does not by itself deny appellant due process." (*Patino, supra,* at p. 1747.)

Moreover, as the *Patino* court concluded, "the essence of a due process violation is a denial of a criminal defendant's right to a fair trial. (See *People v. Bell* (1989) 49 Cal.3d 502, 534.)" (*Patino, supra,* 26 Cal.App.4th at p. 1747.) *Patino* rejected the due process challenge because the defendant in that case "failed to demonstrate how his fundamental right to a fair trial was violated by the introduction of CSAAS testimony to rehabilitate [the victim's] testimony after a rigorous defense cross-examination calling into question the victim's credibility." (*Ibid.*)

This court has noted its agreement with the opinions of other districts that admission of CSAAS evidence does not violate a defendant's due process and fair trial rights. (*In re S.C.* (2006) 138 Cal.App.4th 396, 418.) We said: "[I]t has long been held

4

that in a judicial proceeding presenting the question whether a child has been sexually molested, CSAAS is admissible evidence for the limited purpose of disabusing the fact finder of common misconceptions it might have about how child victims react to sexual abuse.  [Citations.]" (*Ibid.*)

Acknowledging our prior holding, defendant invites us, in essence, to reconsider, arguing that, because the California Supreme Court has not expressed an opinion concerning this specific issue, we are not bound.  We decline the invitation.  While it is not improper for defendant to make this argument on appeal, we are under no obligation to reconsider precedent.  (See *People v. Hughes* (2002) 27 Cal.4th 287, 346-348 [declining to reconsider precedent]; see also *People v. Sattiewhite* (2014) 59 Cal.4th 446, 479-480 [same].)

II

*CALCRIM No. 1193*

Defendant contends that, even if the CSAAS evidence was admissible, the trial court erred by using CALCRIM No. 1193 to instruct the jury concerning the use of CSAAS evidence.  He argues that the instruction allowed the jury to use the CSAAS evidence in determining the victims' credibility.  We conclude there was no instructional error.

The trial court instructed the jury, using CALCRIM No. 1193, as follows:  "You have heard testimony from Dr. Anthony Urquiza regarding child sexual abuse accommodation syndrome.  [¶]  Dr. Urquiza's testimony about child sexual abuse accommodation syndrome is not evidence that the defendant committed any of the crimes charged against him.  [¶]  You may consider this evidence only in deciding whether or not the named victim's conduct was not inconsistent with the conduct of someone who has been molested, and in evaluating the believability of his or her testimony."

Defendant did not object to CALCRIM No. 1193 in the trial court.  However, "a defendant need not assert an objection to preserve a contention of instructional error

5

when the error affects the defendant's 'substantial rights.' [Citation.]" (*People v. Felix* (2008) 160 Cal.App.4th 849, 857.) Because defendant claims the instruction is legally incorrect to the point where it misinforms the jury to his prejudice, resulting in a miscarriage of justice, we will examine his claim on its merits.

Defendant argues that the last phrase of the instruction, "in evaluating the believability of his or her testimony," impermissibly expanded the use of CSAAS evidence and, in defendant's words, "erroneously told the jury it could use the evidence to [corroborate the victim's claims of abuse]." To the contrary, CALCRIM No. 1193, itself, informed the jury that it could not use the CSAAS evidence to conclude defendant committed the crimes. Defendant's reading of the last phrase of the instruction is inconsistent with the remainder of the instruction. Read as a whole, the instruction directed the jury that it could use the CSAAS evidence to evaluate whether behavior by the victims that was *seemingly inconsistent* with being molested was actually *not inconsistent*. As the instruction properly notes, that is an aspect of determining the victims' believability.

Speaking of CSAAS evidence, the California Supreme Court said: "[E]xpert testimony on the common reactions of child molestation victims is not admissible to prove that the complaining witness has in fact been sexually abused; it is admissible to *rehabilitate such witness's credibility* when the defendant suggests that the child's conduct after the incident – e.g., a delay in reporting – is inconsistent with his or her testimony claiming molestation. [Citations.] 'Such expert testimony is needed to disabuse jurors of commonly held misconceptions about child sexual abuse, and to explain the emotional antecedents of abused children's seemingly self-impeaching behavior.' " (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1300-1301, italics added, fn. omitted.)

Because CSAAS evidence is admissible to rehabilitate a witness's credibility, it is not error for a trial court to instruct a jury, using CALCRIM No. 1193, that it may use the

6

CSAAS evidence in evaluating the believability of the witness's testimony with the further direction that the CSAAS testimony is not evidence that defendant committed the crimes.

## III

### *Sufficiency of Evidence*

Defendant contends that the evidence was insufficient to support a conviction in count two, penetration of an unconscious person with a foreign object.  He claims that, because there were inconsistencies in the testimony of S.T. concerning whether she was asleep when defendant put his finger in her vagina, the evidence on that point was insubstantial.  We conclude the evidence supports the conviction.

" 'In reviewing the sufficiency of evidence under the due process clause of the Fourteenth Amendment to the United States Constitution, the question we ask is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' [Citation.]  We apply an identical standard under the California Constitution.  [Citation.]  'In determining whether a reasonable trier of fact could have found defendant guilty beyond a reasonable doubt, the appellate court "must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' [Citation.]" (*People v. Young* (2005) 34 Cal.4th 1149, 1175, italics omitted.)  In reviewing the sufficiency of the evidence, "a reviewing court resolves neither credibility issues nor evidentiary conflicts.  [Citation.]  Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact.  [Citation.]" (*Id.* at p. 1181.)  We will reverse for insufficient evidence only if " ' " 'upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' [Citation.]" ' " (*People v. Manriquez* (2005) 37 Cal.4th 547, 577.)

7

Section 289, subdivision (d) provides: "Any person who commits an act of sexual penetration, and the victim is at the time unconscious of the nature of the act and this is known to the person committing the act or causing the act to be committed, shall be punished by imprisonment in the state prison for three, six, or eight years. As used in this subdivision, 'unconscious of the nature of the act' means incapable of resisting because the victim . . . [w]as unconscious or asleep."

When S.T. was 14 years old, defendant lived with her and her family. He was the boyfriend of S.T.'s sister. One night, defendant woke up S.T. and invited her to watch television with her. She sat near him on the couch and watched television for a few minutes, but she went back to bed because she felt uncomfortable.

After S.T. had fallen asleep, defendant entered her room. On direct examination, S.T. testified that she woke up with defendant's finger inside her vagina. She told defendant to stop, but he got on top of her and raped her.

On cross-examination, S.T. testified as follows concerning what happened after she went back to bed and went to sleep:

"Q And so the next thing that happens is what?

"A He came in and he was touching my right leg.

"Q And were you asleep at the time?

"A Yes.

"Q Okay. Do you have an idea from the time you left the couch, went to your room, fell asleep, and then [defendant] came in, do you have a sense of the time?

"A Probably I don't have a time. Like I said, I didn't have a watch, and there was no clock in our room.

"Q Sure, understood.

"A So a couple minutes, wasn't an hour.

"Q But you were asleep?

"A Yes.

8

"Q      Do you know how long you were asleep for?

"A      No.

"Q      Okay.  But you think it was a couple of minutes?

"A      Yes.

"Q      And what was that based on?

"A      I don't know, just from the walk from there, and me laying in my bed and laying down, and I know I was sleeping, and then I felt his hand touch my thigh and my thigh to my vagina.

"Q      Okay.  I got that part.  I'm just trying to get a sense of the time that you are asleep.  And so I'm clear, you think you were asleep for two minutes?

"A      I was asleep.  It was late.  I was sick.  I was young and I went to sleep, so I don't know the time.  I don't know the minutes, but I know I was asleep.

"Q      That's all I'm asking.  I wasn't there, so that's why I'm asking.  Because once you go to sleep, sometimes it is hard to tell how long you have been asleep for, and that's why I'm asking that question.

"A      Right.

"Q      So then the next thing you know is [defendant] lying next to you, true?

"A      He's squatted down on the side of the bed right here.

"Q      Is he in bed with you?

"A      Not at that time he touched my thigh, no.

"Q      And that's what wakes you up?

"A      Yes.  No, the hand touch to my vagina was what woke me up.

"Q      Okay.  So he touches your leg and then touches your vagina, true?

"A      Yes.

"Q      But it is the touching of the vagina that wakes you up?

"A      Yes.

"Q      Then how do you know he touched your leg if you are asleep?

9

"A      Rubbing my leg.  Obviously, he was rubbing my leg.

"Q      Okay.  How is that obvious?

"A      I felt him.  My vagina is not that far from my leg.

"Q      Okay.  So you understand my question --

"A      I do understand the question and I'm answering it.

"Q      If he wakes you up by touching your vagina, but you also remember him touching your leg before that, and so my question is how would you know that if you were asleep?

"A      I was asleep when he touched me.  I know I was, and I felt him touch me."

Defendant argues:  "There is no substantial evidence that [S.T.] was unconscious, i.e., asleep, when [defendant] penetrated her.  Rather, she was awakened by his hand touching or rubbing her leg or thigh, after which his hand touched her vagina."

Defendant's argument is not consistent with the proper view of the evidence.  S.T. testified three times – once on direct examination and twice on cross-examination – that she woke up when he touched her vagina.  Further, she said that, when he touched her vagina it was on the inside, thus penetration.  While she also said that he rubbed her leg before he touched her vagina, it was for the jury to resolve this apparent inconsistency in S.T.'s testimony.  There was nothing about her statements that his touching her vagina woke her up that was so unbelievable in context that we must reject it.

Defendant is not entitled to his own interpretation of the evidence on appeal. Resolution of conflicts and inconsistencies is the exclusive province of the jury.  And we cannot reverse unless there is no interpretation of the evidence consistent with conviction. (*People v. Manriquez, supra,* 37 Cal.4th at p. 577.)  Since there is an interpretation of the evidence supporting the conviction – that defendant's insertion of his finger in S.T.'s vagina woke her up – we must conclude that the evidence was sufficient to sustain a conviction for penetration of an unconscious person with a foreign object.

IV

*Multiple-Victim Finding on Count Two*

In his opening brief, defendant appends to the end of his sufficiency of evidence argument a paragraph making a different argument – that a multiple-victim allegation on count two (penetration of an unconscious person with a foreign object) was statutorily unauthorized under the "One Strike" law because the One Strike law's multiple-victim enhancement does not apply to the crime alleged in count two. Apparently, the Attorney General did not notice this second argument because she did not respond. We conclude defendant forfeited this argument by failing to raise it properly. And, in any event, the argument is without merit because, even if the jury made a finding that does not apply to that offense, the finding was not adopted as part of the judgment. Therefore, there is nothing to correct.

The One Strike law provides for enhanced sentencing if, among other things, a defendant committed specified sexual offenses against multiple victims. (§ 667.61, subd. (e)(4).) Defendant asserts on appeal that that the multiple-victim enhancement does not apply to penetration of an unconscious person with a foreign object, a violation of section 289, subdivision (d). He observes correctly that a violation of section 289, subdivision (d) is not one of the offenses listed in the One Strike law. (§ 667.61, subd. (c).) On the verdict form for count two, however, the jury found true that defendant committed offenses against multiple victims.

An appellant must make each contention under a separate heading in his opening brief. (See Cal. Rules of Court, rule 8.204(a)(1)(B); *Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830, fn. 4 [an appellant must present each point separately in the opening brief under an appropriate heading, showing the nature of the question to be presented and the point to be made; failure to do so may be deemed a forfeiture of the argument].) Here, a contention that an enhancement was not statutorily applicable to an offense is different from a contention that the evidence was insufficient

11

to sustain a conviction for the offense.  Therefore, failure to make the appended contention under a separate heading forfeited consideration of that contention.

But the forfeiture, as well as the argument, are of no moment here.  While the verdict form contained a true finding as to a multiple-victim allegation, defendant admits that the trial court did not impose an enhancement as to count two under the One Strike law.  Neither the judgment, nor the abstract of judgment, mentions an enhancement under the One Strike law for count two.  Accordingly, even if defendant's contention is correct that the One Strike law does not apply to penetration of an unconscious person with a foreign object, there is no error to correct here because no such enhancement was imposed.

V

*Alleged Cumulative Prejudice*

Defendant contends that, even if errors in the trial were not prejudicial individually, they were prejudicial cumulatively, thus requiring reversal.  Because we have found no error in the trial, there is no reason to consider whether errors were prejudicial cumulatively.

Nonetheless, defendant also contends that, "even if the state court correctly applied state law and correctly adhered to state procedural and evidentiary rules in [defendant's] case, the state proceedings did not comport with fundamental fairness and deprived [defendant] of a fair trial."  This is not a cumulative prejudice contention, but rather a contention that the proceedings violated his due process rights.

To attempt to support this argument, defendant simply lists much of the evidence, procedure, and instructions that are proper under state law and concludes that this violated his due process rights under the federal Constitution.  However, he does not identify why any of the evidence, procedure, or instructions violated his federal constitutional rights except to make a vague assertion that "trials for sexual offenses

12

against children deprive defendants . . . of the fundamentally fair trial guaranteed by due process . . . ."

Given such a vague assertion, we have no way to analyze it and consider its merit. Accordingly, we can only conclude that it is without merit.

VI

*Sentencing Error*

Defendant contends the trial court erred by imposing second strike sentencing on counts one and two – rape and penetration of unconscious victim, respectively, of S.T. – because the "prior conviction" did not occur prior to the crimes in counts one and two. The Attorney General agrees and requests this court to modify the sentences on those counts. We agree that the sentences must be modified.

The second strike sentencing scheme applies to a criminal who "previously has been convicted" of a serious or violent felony. (§ 667, subds. (a)(1) & (b).) We have held, therefore, that the "Three Strikes" law did not apply when a defendant experienced his "prior conviction" *after* he committed the charged offense. (*People v. Flood* (2003) 108 Cal.App.4th 504, 507-508.) We said: "The word 'previously' means the *conviction* for a serious or violent felony *must* precede the present felony; the present felony must be committed *after* the serious or violent felony conviction." (*Id*. at p. 507, original italics.)

Here, defendant committed the crimes alleged in counts one and two in February 1998. However, he was convicted of his prior crime of making a criminal threat on June 23, 1998, after he committed the crimes alleged in counts one and two. Therefore, the criminal threat conviction was not a prior conviction when defendant committed the crimes alleged in counts one and two.

Relying on the criminal threat conviction at sentencing, the trial court doubled the term for count one to an indeterminate term of 30 years to life and doubled the term for count two to a determinate term of 16 years, both under section 667, subdivision (e)(1). The court also added a five-year enhancement to count one under section 667,

13

subdivision (a).  Both of those provisions, however, require that the defendant was previously convicted of the crime.  (*People v. Flood, supra,* 108 Cal.App.4th at pp. 507-508.)  Because defendant was not previously convicted of making a criminal threat when he committed the crimes alleged in counts one and two, the court erred by doubling the sentences on counts one and two and adding a five-year enhancement to count two.  We must modify the sentence to correct the error.

## DISPOSITION

The sentence on count one is modified to an indeterminate term of 15 years to life. The sentence on count two is modified to a determinate term of eight years, and the five-year enhancement imposed as to count two under section 667, subdivision (a), is struck. As modified, the judgment is affirmed.  The trial court is directed to prepare an amended abstract of judgment and to send it to the Department of Corrections and Rehabilitation.


      NICHOLSON      , Acting P. J.


We concur:


      DUARTE      , J.


      HOCH      , J.

14