[No. C018216. Third Dist. Apr. 26, 1995.]

WILLIAM OPDYK, Plaintiff and Appellant, v.
CALIFORNIA HORSE RACING BOARD, Defendant and Respondent.

COUNSEL

David Morton Shell and Jeanine K. Clasen for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, William S. Clark and Gregory J. Rolen, Deputy Attorneys General, for Defendant and Respondent.

OPINION

**MORRISON, J.**—The California Horse Racing Board (Board) upheld the exclusion of a gambler from all racetracks in California, although his

misdemeanor bookmaking conviction was by plea of nolo contendere and was expunged after a period of probation. The superior court denied the gambler relief on other grounds, but we conclude the Board acted properly in excluding him as a convicted bookmaker.

In June 1988, William Opdyk, a self-styled "professional gambler," pleaded nolo contendere to one count of bookmaking, charged as a felony but reduced to a misdemeanor (Pen. Code, § 337a, subd. (1)).[1] On December 5, 1991, after successfully completing probation, Opdyk's motion for expungement (Pen. Code § 1203.4) was granted. After he was excluded from the simulcast wagering facility at Cal Expo in Sacramento, he requested an administrative hearing: The Board upheld his exclusion. He filed a petition for writ of administrative mandamus which was denied.

■ For three reasons Opdyk suggests his conviction should not be used against him by the Board. First, it was by plea of nolo contendere. Second, it has been expunged. Third, he is now rehabilitated.[2] We will address these claims seriatim.

1. In *Cartwright* v. *Board of Chiropractic Examiners* (1976) 16 Cal.3d 762 [129 Cal.Rptr. 462, 548 P.2d 1134], the Supreme Court held that a conviction by plea of nolo contendere may not be used by a board to impose discipline in the absence of legislative authorization. The Legislature has largely abrogated *Cartwright* and now provides broad authorization for boards to impose such discipline. (Bus. & Prof. Code, §§ 7.5 [defining conviction to include nolo contendere pleas], 480 [denial of license], 490 [suspension and revocation of license]; further unspecified references are to this code; Stats. 1979, ch. 876, §§ 1-3. pp. 3057-3058. See *Arneson* v. *Fox* (1980) 28 Cal.3d 440, 447 [170 Cal.Rptr. 778, 621 P.2d 817].)

---

[1]Penal Code section 337a provides in relevant part: "Every person, [¶] 1. Who engages in pool selling or bookmaking, with or without writing . . . [¶] . . . is punishable by imprisonment in the county jail for a period of not more than one year or in the state prison."

[2]Nowhere in Opdyk's brief do we find any attempt to defend the trial court's position that it makes any difference whether the crime is a misdemeanor or felony, but at oral argument counsel pursued the point. In view of the plain language of the relevant statutes, discussed *post*, we see no principled reason for making a distinction between felonies and misdemeanors. (See Bus. & Prof. Code, §§ 7.5, 490, 19572 [reference to "conviction," "crime" and "any law prohibiting bookmaking," not to "felony"]; 2 Cal. Criminal Law (Cont.Ed.Bar 1994) Effect of Criminal Conviction on Professional Licenses, §§ 47.5-47.6, pp. 1224-1226.) Opdyk makes no claim that exclusion of convicted bookmakers bears no substantial relationship to the activities regulated by the Board. (See *Epstein* v. *California Horse Racing Board* (1963) 222 Cal.App.2d 831, 835 [35 Cal.Rptr. 642] [bookmakers excluded since creation of Board in 1933; when a court decision invalidated the practice, the Legislature "immediately" abrogated the decision.] See also *Morrison* v. *California Horse Racing Bd.* (1988) 205 Cal.App.3d 211, 218 [252 Cal.Rptr. 293].)

Section 7.5 provides in relevant part: "A conviction within the meaning of this code means . . . *a conviction following a plea of nolo contendere.* Any action which a board is permitted to take following the establishment of a conviction may be taken . . . when an order granting probation is made suspending the imposition of sentence, *irrespective of a subsequent order under the provisions of Section 1203.4 of the Penal Code.*" (Italics added.)[3]

The Board is empowered to adopt rules which "provide for the exclusion or ejection from any inclosure where horseraces are authorized . . . of any known bookmaker . . . [or] person who has been convicted of a violation of . . . any law prohibiting bookmaking[.]" (§ 19572.) The Board has adopted implementing regulations which track the language of section 7.5. (Cal. Code Regs., tit. 4, § 1420, subd. (f), § 1980, subd. (a)(1).)

The statutes provide a clear legislative authorization to utilize convictions arising upon pleas of nolo contendere, bringing the Board outside of the *Cartwright* strictures. (See 2 Cal. Criminal Law, *supra,* Effect of Criminal Conviction on Professional Licenses, § 47.4, p. 1224.)

2. Penal Code section 1203.4 in general terms provides that upon completion of probation a person may have his or her conviction expunged. It has long been held that an expungement of a bookmaking conviction does not relieve a person from the status of "known bookmaker." (*Epstein* v. *California Horse Racing Board, supra,* 222 Cal.App.2d 831, 841.) But more importantly, the expungement statute "was never intended to obliterate *the fact* that defendant has been 'finally adjudged guilty of a crime.' . . . It merely frees the convicted felon from certain 'penalties and disabilities' of a criminal or like nature." (*Adams* v. *County of Sacramento* (1991) 235 Cal.App.3d 872, 877-878 [1 Cal.Rptr.2d 138], citations omitted. See *id.* at pp. 880-881 [discussing a line of cases which "consistently upheld denial of a license or the right to pursue a particular profession on the basis of an expunged conviction"].) The Legislature has defined "conviction" to include expunged convictions. (§ 7.5.) Opdyk cites no authority for the proposition that the statute granting the Board the power to exclude convicted bookmakers (§ 19572) uses a definition of "conviction" other than the one provided by section 7.5.

---

[3]A more specific statute defines convictions used to discipline licensees: "A board may suspend or revoke a license on the ground that the licensee has been convicted of a crime[.] . . . *A conviction within the meaning of this section means a plea or verdict of guilty or a conviction following a plea of nolo contendere.* Any action which a board is permitted to take following the establishment of a conviction may be taken . . . *irrespective of a subsequent order under the provisions of Section 1203.4 of the Penal Code.*" (§ 490, italics added; see § 475, subd. (a)(2).) The similarity between sections 7.5 and 490 is explained by the fact that the former statute was enacted in the same measure which rewrote the latter. (See Stats. 1979, ch. 876, §§ 1, 3, pp. 3057-3058.) Although Opdyk possessed a racehorse owner's license which had been suspended, this case seeks redress only from the Board's act of excluding him from the track.

3. "If the Board finds that the applicant is within one of the classes of persons who are prohibited from participating in parimutuel wagering and from being present within any racing inclosure, the Board *may, in its discretion*, make a further finding that the applicant's presence within the public inclosure would not be against the best interests of horseracing, and an exception should be made authorizing him to participate in parimutuel wagering in the future." (Cal. Code Regs., tit. 4, § 1986, subd. (a), italics added.)

To the extent Opdyk contends his expungement automatically makes him "rehabilitated" within the meaning of Board rules he is mistaken. The Board has the discretion to make such a finding, but need not. If the mere fact of expungement compelled the Board to find a person was rehabilitated, the language of section 7.5 regarding expungement orders under Penal Code section 1203.4 would be meaningless: no person whose conviction was expunged could be excluded. To the extent Opdyk contends the Board abused its discretion by *not* finding him to be "rehabilitated," he is mistaken: The record before the Board showed he continued to enter racing inclosures and gamble (winning substantial sums) despite his ineligibility, and he admitted having others run bets for him on one occasion. This demonstrates that he has flouted the Board's authority over horse racing and reflects an inability on his part to conform his gambling behavior to legal requirements, including the rules of the Board. Given this evidence, he did not carry his burden to prove he was "rehabilitated" and therefore the Board did not abuse its discretion in declining so to find. (See *Epstein* v. *California Horse Racing Board, supra,* 222 Cal.App.2d at pp. 842-843.)

At oral argument Opdyk raised two other issues connected to his argument about rehabilitation. First, he pointed to testimony of two character witnesses. This testimony was not discussed in his brief. Second, he urges the case should be remanded because the Board failed to provide any notice of what standards it applies in making the determination that a person is or is not rehabilitated. ■ But "A contention made for the first time in an appellant's reply brief, unaccompanied by any reason for omission from the opening brief, may be disregarded. . . ." (*Diamond Springs Lime Co.* v. *American River Constructors* (1971) 16 Cal.App.3d 581, 609 [94 Cal.Rptr. 200], citation omitted. See *Kahn* v. *Wilson* (1898) 120 Cal. 643, 644 [53 P. 24].) Perforce, issues raised at oral argument come too late.[4]

---

[4]Opdyk has filed a rehearing petition urging, inter alia, that he raised in his brief the issue that the case must be remanded due to the Board's failure to promulgate standards for rehabilitation. We disagree.

His heading regarding rehabilitation states, "Respondent committed an abuse of discretion when it refused to determine that appellant was rehabilitated and should be allowed to wager." We do not find in this heading any due process claim or any mention of lack of

But we are troubled by the failure of the Board to provide any guidelines determining rehabilitation, *vel non*. Section 482 commands that "Each board under the provisions of this code shall develop criteria to evaluate the rehabilitation of a person . . . ." Dozens of boards have complied. (See list following 3A West's Ann. Bus. & Prof. Code (1990 ed.) § 482, pp. 114-115.) If the State Board of Guide Dogs for the Blind, the Office of Real Estate Appraisers and nearly 40 other agencies can formulate rehabilitation guidelines (Cal. Code, Regs., tit. 16, § 2291; *id.*, tit. 10, § 3552), why can't the Horse Racing Board? We urge the Board to consider this matter.

DISPOSITION

The judgment is affirmed.

Blease, Acting P. J., and Raye, J., concurred.

A petition for a rehearing was denied May 22, 1995.

---

notice. The failure to head an argument as required by California Rules of Court, rule 15(a), constitutes a waiver. (*Live Oak Publishing Co.* v. *Cohagan* (1991) 234 Cal.App.3d 1277, 1291 [286 Cal.Rptr. 198]; *People* v. *Ladd* (1982) 129 Cal.App.3d 257, 262 [181 Cal.Rptr. 29]; *Lady* v. *Smith* (1937) 19 Cal.App.2d 167, 168 [65 P.2d 76].)

Moreover, the passage on which Opdyk relies begins, "The term 'rehabilitation' is not defined anywhere in the Business and Professions Code or the rules of the CHRB. In the absence of a standard for rehabilitation, respondent must produce some facts which link the evidence to the findings, and the findings to the order and which tells the courts 'whether and to what extent' appellant has not rehabilitated himself sufficient that he should not be allowed to wager." We took Opdyk at his word and explained what facts supported the Board's determination. It is true that he cited a case, *Wheeler* v. *State Bd. of Forestry* (1983) 144 Cal.App.3d 522 [192 Cal.Rptr. 693], which involved the propriety, *vel non*, of administrative determinations made without standards. But rather than make the argument that the lack of standards itself required a remand, Opdyk made the argument that "in the absence of such standards respondent must produce some facts which link the evidence to the findings, and the findings to the order and which tells the courts 'whether and to what extent' appellant has not rehabilitated himself sufficient that he should not be allowed to wager." We addressed that argument. We are not obliged to make other arguments for him (see *Diamond Springs Lime Co.* v. *American River Constructors, supra,* 16 Cal.App.3d at p. 608), nor are we obliged to speculate about which issues counsel intend to raise.

The purpose of requiring headings and coherent arguments in appellate briefs is "to lighten the labors of the appellate [courts] by requiring the litigants to present their cause systematically and so arranged that those upon whom the duty devolves of ascertaining the rule of law to apply may be advised, as they read, of the exact question under consideration, instead of being compelled to extricate it from the mass." (*Landa* v. *Steinberg* (1932) 126 Cal.App. 324, 325 [14 P.2d 532].) For this reason the rehearing petition is denied.