Filed 2/24/22  J.M. v. M.Z. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| J.M.,<br><br>　　　Plaintiff and Appellant,<br><br>　　v.<br><br>M.Z.,<br><br>　　　Defendant and Respondent. | D077335, D078210<br><br><br>(Super. Ct. No. 17FL002408C) |

APPEAL from orders of the Superior Court of San Diego County, Daniel S. Belsky, Judge.  Affirmed.

Jennifer Merryman, in pro. per., for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

J.M. (Mother) and M.Z. (Father) are the parents of minor daughter A.Z. (Daughter).  Mother appeals from two family court orders addressing custody and visitation issues.  Mother is representing herself in this appeal, and Father has made no appearance.

The first order Mother challenges is a May 6, 2020 Findings and Order After Hearing (FOAH) pertaining to a February 21, 2020 hearing.[1] Mother's appellate challenge to this order arises from the sequence in which the family court heard the parties' competing requests for relief. Mother had obtained a one-year domestic violence restraining order (DVRO) against Father, which incorporated the court's child custody and visitation orders. Before the DVRO expired, Father filed a request to increase his visitation, and Mother filed a request to renew the DVRO permanently. The court heard Father's request at the February 21 hearing, and did not hear Mother's request until a later March 4 hearing. Mother contends the court erred by hearing Father's request first because DVRO hearings are entitled to calendaring "precedence" (Fam. Code, § 244),[2] or, alternatively, because she established she was entitled to a continuance of Father's hearing. As we will explain, however, the court did not err in hearing Father's request first because Mother

---

[1] Mother purported to appeal the minute order from the February 21, 2020 hearing, but because the minute order directed Father to prepare a FOAH, the minute order is not appealable. (*Laraway v. Pasadena Unified School Dist.* (2002) 98 Cal.App.4th 579, 583 (*Laraway*) [orders that contemplate "further action, such as the preparation of another order or judgment" are not appealable]; *Davis v. Taliaferro* (1963) 218 Cal.App.2d 120, 122-123 (*Davis*) [same].) We exercise our discretion to deem Mother to have appealed prematurely from the FOAH, which is an appealable postjudgment order. (Cal. Rules of Court, rule 8.104(d)(2) ["The reviewing court may treat a notice of appeal filed after the superior court has announced its intended ruling, but before it has rendered judgment, as filed immediately after entry of judgment."]; see *In re Marriage of Campi* (2013) 212 Cal.App.4th 1565, 1571, fn. 4 (*Campi*) [same]; Code Civ. Proc., § 904.1, subd. (a)(2) [postjudgment orders are generally appealable].) Further undesignated rule references are to the California Rules of Court.

[2] Further undesignated statutory references are to the Family Code.

admittedly still had not served Father with her moving papers by the time of the hearing on Father's request, which had been pending for five months. Moreover, the court ultimately dismissed Mother's request when she failed to appear for the hearing.

The second order that Mother appeals is an October 19, 2020 FOAH pertaining to a July 30, 2020 hearing.[3] In this order, the family court further modified custody and visitation, denied a motion by Mother to transfer the case to a different division of the same court, and denied requests by Father to sanction Mother and have her declared a vexatious litigant. Based on this order (and other adverse rulings that she has not appealed), Mother makes a generalized claim that the court "stigmatized" her "for her status as a victim, her gender and her socioeconomic background." As we will explain, however, Mother did not properly preserve a claim of judicial bias for appellate review, nor has she properly presented such a claim on appeal. And, as we will further explain, Mother has not properly presented any specific challenges to this second order (or to the other orders she did not appeal).

Accordingly, we affirm the orders.

_____

[3] Again, Mother purported to appeal the nonappealable minute order. (See *Laraway*, *supra*, 98 Cal.App.4th at p. 583; *Davis*, *supra*, 218 Cal.App.2d at pp. 122-123.) We exercise our discretion to deem Mother to have prematurely appealed from the appealable FOAH. (See rule 8.104(d)(2); *Campi*, *supra*, 212 Cal.App.4th at p. 1571, fn. 4; Code Civ. Proc., § 904.1, subd. (a)(2).)

## FACTUAL AND PROCEDURAL BACKGROUND

### *Background*

Mother and Father were in a romantic relationship from 2011 to 2014, but never married.  Daughter was born in November 2013.

Mother commenced this action in March 2017 by filing a petition for custody and support.  In October 2017, the family court entered a stipulated judgment establishing Father's paternity.  The court ordered custody and visitation as set forth in a report from Family Court Services (FCS) dated June 23, 2017.  This FCS report specified the parents shared joint legal custody, Mother had primary physical custody, and Father had visitation on two weekday evenings (subject to change).

### *The DVRO*

On December 3, 2018, Mother applied ex parte for a DVRO against Father.  The court issued a temporary restraining order in mid-December; held an evidentiary hearing on February 13 and 19, 2019;[4] and issued a one-year DVRO on February 19 (expiring at midnight on February 20, 2020).

The DVRO provided for custody and visitation as set forth in an attached FCS report dated December 20, 2018.[5]  This report increased Father's visitation to "each week from Monday after school (approximately 3 PM) until Wednesday after school (approximately 3 PM)."  The DVRO

---

[4]     The appellate record includes a reporter's transcript of the February 13 hearing, but not the February 19 hearing.  At the February 13 hearing, Mother testified Father was "physically violent" with her "hundreds of times," including by forcefully grabbing her wrists and restraining her, grabbing her skin and twisting it, digging his nails into her wrists, and pushing and shoving her  On one occasion, he hit her in the face with a closed fist.

[5]     This report was the result of an FCS mediation on December 17, 2018.

allowed Father to have "[b]rief and peaceful contact with [Mother] and peaceful contact with [Daughter] as required for court-ordered visitation."

### *Challenged Orders*

#### *May 6, 2020 FOAH Regarding February 21, 2020 Hearing*

On September 10, 2019, Father filed a request for order (RFO) seeking, among other things, to increase his visitation by one day per week. The court set the RFO to be heard about five months later, on February 21, 2020.

On February 14, 2020—about one week before the DVRO was set to expire and the court was set to hear Father's RFO—Mother filed a request to "permanently" renew the DVRO (renewal request). The court set this request to be heard on March 4, 2020.

Mother made two last-minute requests to continue the February 21 RFO hearing, both of which the court denied.

On February 21, the court heard Father's RFO and granted his request for one additional day of visitation. The court issued a minute order directing Father's counsel to prepare a FOAH. Mother did not appear at this hearing, but an attorney appeared on her behalf.

On March 4, the court "dismissed" Mother's renewal request because she failed to appear for the hearing. The court noted in its order that the DVRO "expires this date." Mother still had not served Father with her moving papers.

On May 6, the court entered Father's proposed FOAH pertaining to the February 21 hearing.

#### *October 19, 2020 FOAH Regarding July 30, 2020 Hearing*

At the end of the February 21 hearing on Father's RFO, the court continued the matter for further proceedings, which were ultimately heard on July 30, 2020.

5

On June 2, Mother filed a motion to transfer the case from the court's central division to its eastern division.[6] Mother based her request on the fact she and Daughter had moved, and the claim she could not receive a fair hearing from the current court. Father opposed the motion. The court set the matter to be heard July 30, 2020.

On July 6, Mother filed an RFO seeking to "exercise her parental rights in time of crisis in the absence of any enforceable child custody orders." Father opposed the request. The court set this RFO to be heard on July 30, 2020.

On July 7, Father applied ex parte for leave to file an RFO seeking to sanction Mother and have her declared a vexatious litigant, to be heard on shortened notice on July 30. The court granted the scheduling request.

The court heard the parties' competing matters on July 30. The court granted Father's September 10, 2019 RFO, and denied his requests for sanctions and to declare Mother a vexatious litigant. The court also denied Mother's request to transfer the case, finding that doing so "would not be in keeping with judicial economy," and that Mother "is attempting to forum shop" because she "is not happy with some of [the court's] rulings."

---

[6] We grant Mother's "Motion to Certify Exhibit Omission(s) to the Record" as to pages 410 through 412, and 530 through 573, of volume 1. (See rule 8.155(c)(1) ["On motion of a party, on stipulation, or on its own motion, the reviewing court may order the correction or certification of any part of the record."].) In all other respects, we deny the motion as unnecessary to our disposition of the appeal.

# DISCUSSION

## I. Appellate Principles

"[I]t is a fundamental principle of appellate procedure that a trial court judgment [or order] is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment [or order]." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609 (*Jameson*).) This principle applies even when, as here, no respondent's brief is filed. (See *Lee v. Wells Fargo Bank* (2001) 88 Cal.App.4th 1187, 1192, fn. 7; rule 8.220(a)(2).)

To overcome the presumption of correctness, "an appellant must do more than assert error and leave it to the appellate court to search the record and the law books to test his claim." (*Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 557 (*Yield Dynamics*).) The appellant must provide an appellate record sufficient to establish error as to each challenged order (*Jameson, supra,* 5 Cal.5th at p. 609), and must direct the appellate court to the specific pages of the record that support each argument (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856). If the appellant fails to provide an adequate record, or fails to properly cite to it, the " 'the decision of the trial court should be affirmed.' " (*Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416 (*Gee*).)

The appellant's opening brief must address each claimed error under a clearly identified heading. (Rule 8.204(a)(1)(B); *Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830, fn. 4 (*Opdyk*).) The appellant must "articulate and support" its arguments "in a manner that will make them susceptible of rational evaluation" (*Dahms v. Downtown Pomona Property & Business Improvement Dist.* (2009) 174 Cal.App.4th 708, 719

(*Dahms*), and support them with citations to legal authority (see rule 8.204(a)(1)(B) & (C); *Yield Dynamics*, *supra*, 154 Cal.App.4th at p. 557 ["The appellant must present an adequate argument including citations to supporting authorities and to relevant portions of the record."]). "It is not our place to construct theories or arguments to undermine the judgment [or order] and defeat the presumption of correctness." (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.) Thus, "[w]hen an appellant . . . asserts [a point] but fails to support it with reasoned argument and citations to authority, we treat the point as forfeited." (*Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1075 (*Delta*).)

These rules of appellate procedure apply with equal force to self-represented parties. (See *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247.)

## II. The Court Did Not Err by Hearing Father's RFO First

Mother contends the family court erred by hearing Father's September 10, 2019 RFO before hearing her DVRO renewal request. She claims her renewal request should have been heard first because (1) it was entitled to statutory calendaring precedence (§ 244), or (2) the court erred by denying her requests for a continuance of Father's RFO hearing. She further contends the court committed additional procedural errors. These contentions lack merit.

### A. Background

On September 10, 2019, Father filed an RFO seeking to (1) increase his visitation by one day per week; (2) require Mother to provide proof that she had completed a "high-conflict parenting course," as previously ordered by the court; and (3) require that Daughter's school and medical records reflect her legal name, which bears Father's surname, rather than Mother's

8

surname.  The court set the RFO to be heard about five months later—initially February 7, 2020, but later continued to February 21, 2020 (the day after the DVRO was set to expire).[7]

On February 14, 2020 (six days before the DVRO was set to expire), Mother filed her DVRO renewal request.  She asserted Father had violated a no-communication provision in the DVRO, and "used threatening and intimidating behavior during [custody] exchanges and" in other communications.  The court set a hearing on the renewal request for March 4, 2020.  The original DVRO remained in effect until the hearing on the renewal request.

On February 19 (two days before the hearing on Father's RFO), Mother filed an ex parte request to continue the hearing on Father's RFO on the sole ground that "[Father] has not yet been served [with the renewal request]." The court heard and denied Mother's continuance request the following morning (February 20), finding "[n]o good cause . . . to continue [hearing] on [Father]'s RFO *set for tomorrow*."[8]  (Italics added.)

Later that day (February 20), Mother filed another ex parte request to continue the hearing on Father's RFO.  Mother argued she had "good cause" for her request because (1) she had not yet been able to serve Father with the DVRO renewal request; (2) Father, despite having filed his RFO in

---

[7]     The record does not indicate why the hearing was initially set so far out, or why it was continued.

[8]     Mother filed a petition for writ of mandate in this court seeking to reverse the family court's order.  We summarily denied the petition.

9

September, did not serve it on Mother until "early January";[9] (3) she had not yet "been able to formulate electronic evidence into a user-friendly document for court review"; and (4) she needed time to retain new counsel because her prior counsel's firm recently dissolved. Mother did not cite her health or unavailability as grounds for good cause.

On the morning of February 21, the family court heard Mother's ex parte continuance request. The court denied the request on the ground "[Mother] failed to appear."

On the afternoon of February 21, the court heard Father's RFO. Father and his counsel appeared. Mother did not appear, but an attorney appeared on her behalf. The hearing was not reported, as neither party requested a court reporter. The court's minute order shows the court granted Father's request for one additional day of visitation—every Saturday from 9:00 a.m. to 7:00 p.m., "effective tomorrow." The court noted in the minute order that Father's counsel "indicate[d] [Father] has already rebutted [section] 3044," which establishes "a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child." (§ 3044, subd. (a).)

The court also noted in the minute order that, with respect to the upcoming hearing on Mother's DVRO renewal request, Father's counsel stated Father still "has not yet been served with any papers but that [counsel] will agree to accept service."

---

9    We are unable to verify this claim because the appellate record does not include a proof of service for Father's moving papers.

10

The court directed Father to prepare a FOAH and send it to Mother for approval. The court continued the matter for further proceedings—initially to May 28, and ultimately to July 30.

In the meantime, on March 2, Mother filed a substitution of attorney substituting herself in place of the attorney who appeared for her at the February 21 hearing.

On March 3 (about 10 days after the hearing on Father's RFO), Father filed an ex parte request seeking to "clarify" (1) that the court's February 21 order regarding Saturday visitation "began when ordered," and (2) the process for entering the FOAH. In a supporting declaration, Father asserted Mother had not made Daughter available for visitation on the two intervening Saturdays since the hearing (February 22 and 29). Father also submitted documents showing his counsel served a proposed FOAH on Mother's counsel via mail on February 25, and via email on March 2.

On March 4, the family court heard Father's ex parte request, followed by Mother's DVRO renewal request.[10] As to Father's request, the court's order notes that Father and his counsel appeared, and the "bailiff advised the court that [Mother]'s (former) atty appeared, but said [Mother] would not appear today." The order clarified "there was no stay" of the February 21 orders. Additionally, because Father's counsel "advised that [the FOAH] has already been submitted to [Mother]'s attorney," the court directed Father's counsel to submit the FOAH directly to the court.

Regarding Mother's renewal request, the court's minute order states Mother failed to appear for the hearing. Accordingly, the court dismissed the

---

[10] It is unclear whether the hearing on Father's request was reported. It appears the hearing on Mother's request was reported, but the appellate record contains no reporter's transcript of the hearing.

renewal request, and noted the DVRO "expires this date." Mother still had not served Father with her moving papers.

On May 6, Father submitted a proposed FOAH for the February 21 hearing. The court entered the FOAH that day. The FOAH maintained the parents' joint legal custody over Daughter, Mother's primary physical custody over her, Father's visitation from Monday afternoons through Wednesday afternoons, and holiday and vacations as set forth in the December 20, 2018 FCS report. In addition, the FOAH increased Father's visitation to include Saturdays from 9:00 a.m. to 7:00 p.m.

## B. Analysis

### 1. Calendaring Precedence

Mother's first claim of error is that the family court violated section 244, which generally grants calendaring precedence to DVRO hearings.

Subdivision (b) of section 244 provides that DVRO hearings "shall be set for trial at the earliest possible date and shall take precedence over all other" non-DVRO matters.[11] Subdivision (a) of section 244 provides that "[o]n the day of the hearing, the hearing on the petition shall take precedence over all other [non-DVRO] matters on the calendar that day."[12]

Mother contends these provisions required the family court to set and hear her DVRO renewal request before Father's RFO. We are not persuaded.

_____

[11] Section 244, subdivision (b) states: "The hearing on the petition shall be set for trial at the earliest possible date and shall take precedence over all other matters, except older matters of the same character, and matters to which special precedence may be given by law."

[12] Section 244, subdivision (a) states: "On the day of the hearing, the hearing on the petition shall take precedence over all other matters on the calendar that day, except older matters of the same character, and matters to which special precedence may be given by law."

12

First, Mother has cited no legal authority to support the proposition that hearings on DVRO *renewal requests* are entitled to the same statutory calendaring precedence as hearings on *initial DVRO petitions*.

Second, assuming without deciding that section 244 applies to hearings on DVRO renewal requests, Mother's request was not ready to be set for hearing because she still had not (if ever) served the DVRO renewal request on Father, as required. (See § 243, subd. (a) ["the respondent shall be personally served with a copy of the petition . . . before the hearing"].) A contrary rule would lead to the absurdity of allowing a party to indefinitely continue an adversary's RFO merely by filing a request for a DVRO and thereafter failing or refusing to serve it. "[W]e must . . . 'avoid an interpretation [of a statute] that would lead to absurd consequences.' " (*Citizens for Improved Sorrento Access, Inc. v. City of San Diego* (2004) 118 Cal.App.4th 808, 816.)

Finally, even if the court erred under section 244 by hearing Father's RFO before Mother's renewal request, Mother has not met her burden to show the error caused her any prejudice, particularly in light of the fact the court ultimately denied her request when she failed to appear at her own hearing. (See *Jameson*, *supra*, 5 Cal.5th at pp. 608-609; *Silva v. See's Candy Shops, Inc.* (2016) 7 Cal.App.5th 235, 260 ["An appellant has the burden to overcome the presumption of correctness and show prejudicial error."].)

## 2. Denial of Continuance Requests

Mother also contends the court erred by denying her requests to continue Father's RFO. She maintains she was entitled to a continuance as a matter of right, or in the court's discretion because she established good cause. We disagree.

13

Mother claims she was entitled to a continuance as a matter of right under San Diego Superior Court Local Rule 5.97(4)(A), which she claims provides:

> "The Party served with a Request For Order (form FL-300), order to show cause, or other moving paper *that includes temporary emergency (ex parte) orders*:  (A)  <u>Is entitled to one continuance as a matter of course for a reasonable period of time to respond</u>.  A second or subsequent request by the responding party must be supported by facts showing good cause for the continuance."  (Some underscoring omitted; italics added.)

We have been unable to locate any such *local* rule, but we have located a former California Rule of Court that contained identical language.  (See former rule 5.94(f)(1)(4)(A).)

The problem for Mother is that the rule does not apply to Father's RFO. By its express terms, the rule applies only to RFO's that seek "temporary emergency (ex parte) orders."  (Former rule 5.94(f)(1)(4)(A).)  But Father's RFO did not seek emergency relief.  Rather, it was heard on five months' notice; or, if Mother's representation is accurate, on six weeks' notice.  Either way, the RFO did not seek emergency relief entitling Mother to a continuance as a matter of right.

Alternatively, Mother contends she established "good cause" for a discretionary continuance.  (See § 245, subd. (b) ["Either party may request a continuance of the hearing, which the court shall grant on a showing of good cause."].)  Mother invokes rule 3.1332(c), which provides in part:

> "Although continuances of trials are disfavored, each request for a continuance must be considered on its own merits.  The court may grant a continuance only on an affirmative showing of good cause requiring the continuance.  Circumstances that may indicate good cause include:

14

"(1) The unavailability of an essential lay or expert witness because of death, illness, or other excusable circumstances; [¶] . . . [¶]

"(4) The substitution of trial counsel, but only where there is an affirmative showing that the substitution is required in the interests of justice . . . ."

Mother also cites rule 3.1332(d), which sets forth "facts and circumstances" courts must consider "[i]n ruling on a motion or application for continuance." The factors Mother cites are "[t]he proximity of the trial date"; "[w]hether there was any previous continuance . . ."; "[t]he length of the continuance requested;" "[t]he availability of alternative means to address the problem that gave rise to the motion or application for a continuance"; "[t]he prejudice that parties or witnesses will suffer as a result of the continuance"; "[w]hether the interests of justice are best served by a continuance . . ."; and "[a]ny other fact or circumstance relevant to the fair determination of the motion or application." (Rule 3.1332(d)(1)-(5), (10)-(11).)

"Trial courts generally have broad discretion in deciding whether to grant a request for a continuance." (*Freeman v. Sullivant* (2011) 192 Cal.App.4th 523, 527.) "A court abuses its discretion when it acts arbitrarily, capriciously, or beyond the bounds of reason." (*Aghaian v. Minassian* (2021) 64 Cal.App.5th 603, 619.) "[A]n abuse of discretion results in reversible error only when the denial of a continuance results in the denial of a fair hearing, or otherwise prejudices a party." (*Freeman*, at p. 527.) We find no abuse of discretion in the family court's denial of Mother's continuance requests.

In denying Mother's first ex parte continuance request, the family court found there was "[n]o good cause . . . to continue [the hearing] on [Father]'s RFO *set for tomorrow*." (Italics added.) This suggests the court was focused on the last-minute nature of Mother's request, which is a factor the court was required to consider. (Rule 3.1332(d)(1) [court must consider "[t]he proximity

15

of the trial date"].)  This consideration was all the more heightened with respect to Mother's second continuance request, which was even closer in "proximity [to] the trial date."  (*Ibid.*)

Mother implies the court improperly considered the fact Father "had been waiting a long time to have [his] motion heard."  But the court was required to consider this factor.  (Rule 3.1332(d)(5) ["In ruling on a motion or application for continuance, the court must consider [¶] . . . [¶] [t]he prejudice that parties . . . will suffer as a result of the continuance."].)

Mother argues she established good cause for a continuance because her former counsel's firm dissolved and she did not have time to obtain new counsel.  However, Mother did not substantiate this claim with additional facts establishing when her former counsel's firm dissolved, why her former counsel could not continue to represent her individually, or what steps she took to diligently find replacement counsel.  (See rule 3.1332(c) ["substitution of trial counsel" may constitute good cause "only where there is an affirmative showing that the substitution is required in the interests of justice"]; *Pham v. Nguyen* (1997) 54 Cal.App.4th 11, 18 [no abuse of discretion in denying trial continuance where "request was predicated on the trial court's taking the 'unavailability' of the expert on faith, without any substantial explanation"].)

Finally, although Mother did not appear at the RFO hearing, she never cited her own unavailability as a ground for a good cause continuance.

In sum, the family court did not abuse its discretion in denying Mother's last-minute continuance requests.

### 3.  Other Claimed Errors

Although the thrust of Mother's first appellate challenge relates to the sequence in which the family court heard the parties' competing matters, she

16

appears to assert a variety of additional claimed procedural errors. None of the additional claims has any merit.

First, Mother contends the family court violated the rules of court by allowing Father to directly submit the proposed FOAH to the court without first giving Mother an opportunity to review it. She cites rule 5.125, which governs the "[p]reparation, service, and submission of [an] order after hearing." This rule contemplates at least three procedures for preparing orders: the court may (1) "prepare the order after hearing and serve the parties or their attorneys" (*ibid.*); (2) "order one of the parties or attorneys to prepare the proposed order" (*ibid.*), which triggers a review and objection procedure (*id.*, subd. (b)); or (3) "modify the timelines and procedures in this rule when appropriate to the case" (rule 5.125).

The court initially opted for the second method by directing Father's counsel to prepare the FOAH and send it to Mother for her review. However, after Mother violated the court's February 21 order regarding Saturday visitations—despite having counsel present at the hearing who would have been aware of the order and been duty-bound to relay it to Mother—the court opted for the third method by modifying the procedure to have Father's counsel directly submit a proposed FOAH to the court. Given Mother's apparent violations of the court's interim order, it was "appropriate to the case" for the court to "modify the timelines and procedures" for submitting the FOAH. (Rule 5.125.)

Second, and relatedly, Mother asserts Father's proposed FOAH improperly "delete[d] all of the child . . . custody and visitation orders that were in full force and effect on the date the order was directed prepared." This presumably refers to the terms set forth in the December 2018 FCS reported incorporated into the DVRO. But Father's proposed FOAH

17

continued those provisions—it provided for joint legal custody, primary physical custody with Mother, visitations with Father from Monday afternoons through Wednesday afternoons, and vacations and holidays as set forth in the FCS report.

Third, Mother contends the court erred by modifying visitation without referring the parties to FCS mediation. Although FCS mediation is generally required before a court rules on a contested request "to obtain or modify a temporary or permanent custody or visitation order" (§ 3170, subd. (a)), the record shows the court had previously referred the parties for mediation, which culminated in FCS reports that the court incorporated into custody and visitation orders. The court was not required to resubmit the case to mediation before modifying visitation. (See *In re Marriage of Green* (1989) 213 Cal.App.3d 14, 25 (*Green*) ["*resubmittal* to mediation need not be ordered," italics added].)

Fourth, Mother contends the court erred by increasing Father's visitation without finding he had rebutted the presumption set forth in section 3044 that granting "joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child." (§ 3044, subd. (a).) She maintains the court improperly relied on Father's counsel's "outrageous" representation during the February 21, 2020 hearing that Father "ha[d] already rebutted [section] 3044" at the February 19, 2019 evidentiary hearing on Mother's initial DVRO request. However, Mother has not provided a sufficient appellate record with which to substantiate this claim because the record does not include a reporter's transcript of the February 19, 2019 hearing. February 19 was the second day of the two-day hearing on Mother's DVRO request, at which Father likely presented his defense case and the court likely stated its findings on the

18

record.  (§ 3044 (f)(2) ["If the court determines that the presumption in subdivision (a) has been overcome, the court shall state its reasons in writing *or on the record*," italics added].)[13]  Because Mother failed to provide an adequate record to establish error, the " 'the decision of the trial court should be affirmed.' " (*Gee, supra*, 99 Cal.App.4th at p. 1416.)

### III.  Mother Has Not Established Judicial Bias or Other Error

Although Mother's second appellate challenge purports to arise from the October 19, 2020 FOAH pertaining to the July 30, 2020 hearing, the overarching theme of her claim—that the court "stigmatized" her—is more akin to one for judicial bias.  As we will explain, Mother did not properly preserve or present this claim for appellate review.  Alternatively, to the extent Mother purports to challenge specific aspects of the October 19, 2020 FOAH (or other orders she did not appeal), her claims either are not properly presented or lack merit.

### A.  Background

Because Mother bases her judicial bias claim on issues beyond those addressed by the family court at the July 30, 2020 hearing and in the resulting October 19, 2020 FOAH, we provide some additional background. We begin by describing the parties' requests addressed at the July 30 hearing.  We then set forth other procedural developments.  We conclude by discussing the July 30 hearing and resulting October 19 FOAH.

### 1.  Requests Addressed at the July 30 Hearing

The court heard four competing requests for relief at the July 30, 2020 hearing:  (1) the continued proceedings on Father's September 10, 2019 RFO;

---

[13]    Nor has Mother provided an appellate record showing the court did not make the required findings at any of the numerous hearings held since the case was filed about two years earlier.

19

(2) a request by Mother to transfer the case to a different division; (3) a motion by Mother "to exercise parental rights . . . in time of crisis and absence of enforceable orders"; and (4) a request by Father to sanction Mother and have her declared a vexatious litigant.

Regarding Father's original RFO, Mother filed a 30-plus page, single-spaced "responsive declaration" (with 27 exhibits) addressing Father's claims. Mother recounted Father's family history, the history of abuse and disputes between Mother and Father, Father's alleged violations of previous DVRO's, Mother's perception of Father and Daughter's relationship, Daughter's health issues and Father's alleged lack of attentiveness to them, the use of Mother's last name on Daughter's school and medical records, and Father's alleged threats to remove Daughter to Mexico.

On June 2, Mother filed a motion to transfer the case from the court's central division to its east division. She based the motion on the fact she and Daughter had since moved closer to the east division courthouse, and on her "belief that she will not get a fair hearing or trial before" the central division court because it "has prejudiced itself against Mother in more than one way and on more than one occasion."

On July 6, Mother filed a "motion to exercise parental rights . . . in time of crisis and absence of enforceable orders." Mother sought temporary sole custody of Daughter to protect her from Father's alleged "consistent refusal to follow doctor recommendations and COVID 19 protocols." Mother also requested that the court order "that neither parent may remove [Daughter] from San Diego County without the other . . . parent's permission or court order."

On July 7, Father applied ex parte for leave to file on shortened notice (so it could be heard at the July 30 hearing) an RFO seeking to sanction

20

Mother and to have her declared a vexatious litigant. On July 9, the court granted leave and Father filed his moving papers.

On July 10, Mother filed an ex parte request asserting she had not received proper notice of Father's July 7 ex parte application to shorten time. Mother accused Father's counsel of repeatedly and deliberately failing to provide proper notice. The appellate record does not indicate how Mother's request was resolved.

Also on July 10, Father filed a responsive declaration to Mother's pending requests. Father opposed Mother's request to transfer the case, arguing that the current court "is intimately aware of the facts in this case," "that [Mother] is unhappy with various Orders made by [the current] Court," and that "[j]ust because [Mother] moves does not mean the case moves with her." Father also opposed Mother's request "to exercise parental rights" (even though he did "not really know what [it] means"). He pointed out that Mother "has yet to complete a High-Conflict Parenting Course as ordered by the court," "does not follow or abide by any Orders made by this Court" and is "violating [Father']s parental rights by denying all visitation." Father denied Mother's allegations regarding health concerns pertaining to Daughter. Finally, he stated he did not object to Mother's request regarding not removing Daughter from the county.

On July 29, Mother filed a responsive declaration addressing the pending issues.

### 2. Other Proceedings

On March 9, Mother filed a request for ex parte relief on the grounds that "[Daughter]'s immediate health and well[-]being are in danger." On March 10, the family court denied the request with a lengthy handwritten ruling that provides in part:

21

"No emergency found after taking testimony from [Mother] and listening to extensive argument. Despite being represented by an atty on 2/21/20, [Mother] claimed she did not know the [visitation] orders made. The Minute Order from 2/21/20 was copied [and] provided to [Mother]. [¶] . . . [¶]

"[The Court] finds that [Mother] has repeatedly taken steps [and] actions to frustrate [Father]'s parenting time with their child. [Mother] is admonished to follow the existing court orders re [child custody and visitation] [and] that failure to do so could subject her to civil or criminal penalties o[r] both. [Citation.]"

Also on March 10, Mother filed a request for a new DVRO. The court denied her request for a temporary restraining order pending a noticed hearing, giving the following explanation: "The parties or their attorneys have been in court several times over the last several weeks, including this morning on [Mother]'s ex parte. She never mentioned the allegations she is now making [and] the court admonished her that she was in violation of the court's CC/CV order [illegible]. The court found that she was actively doing all she could [illegible]." The court set Mother's request for a noticed hearing on April 1. In the interim, the court ordered that "[n]either parent may remove [Daughter] from San Diego County without the other parent's written permission or court order."

On March 16, Mother filed another ex parte request seeking temporary sole custody of Daughter until April 6 so that she could quarantine for health concerns exacerbated by the Covid-19 pandemic. In a supporting declaration, Mother stated she believed the court's February 21 visitation ruling "granted excess" custody, and she explained she had not appeared at that hearing "due to fever and illness and had an attorney sub in pro bono."

22

Due to the Covid-19 pandemic, the court continued the hearings on Mother's requests for a DVRO and for temporary sole custody to June 24, 2020.

On June 22—two days before the hearing on Mother's March 10 DVRO request—Mother filed another DVRO request. In a supporting declaration, Mother asserted (among other things) that Father "regularly engages in verbal abuse of [Daughter]" and has placed her in danger by neglecting her health and failing to observe social distancing practices during the Covid-19 pandemic. Mother stated Daughter "is afraid when she is in Father's care" and "shows signs of stress and anxiety when she returns home from visits." Mother also expressed concern that Father would abduct Daughter, and asserted (erroneously) that the FOAH pertaining to the February 21 hearing was not yet enforceable because it was not signed and file-stamped. The court set Mother's request to be heard on July 15.

On June 24, the court heard Mother's March 10 DVRO request and March 16 ex parte request for temporary sole custody. Based on Mother's acknowledgment that she had not served Father with either request, she withdrew the DVRO request, and the court denied the ex parte request for sole custody.

On July 15, the court heard Mother's June 22 DVRO request. Mother testified about her concerns regarding Daughter's health while in Father's custody, and Father's alleged yelling at Daughter. Mother attempted to testify about statements Daughter made to her, but the trial court sustained Father's hearsay objection. Mother also testified about Father's conduct during custody exchanges and regarding scheduling issues. Finally, Mother testified Father "has a history of threatening to abduct [Daughter] and take her out of the country."

Father's counsel responded that Mother's concerns all related to custody and visitation issues, rather than domestic violence or abuse, and should be addressed at the upcoming July 30 hearing on Father's RFO. The court interjected that it had a "vague recollection" that it had ordered the parents not to remove Daughter from California.

Mother responded that there was no such order in place, the court had never entered the FOAH pertaining to the February 21 hearing, and that when Father submitted the proposed FOAH to the court, he omitted "all of the custody and visitation orders that were previously in place." Mother insisted her request was not about custody and visitation because "there aren't any custody orders that are in place that are enforceable right now."

The court corrected Mother, advised her the court entered the FOAH on May 6, and directed Father's counsel to email Mother a copy. The court found Mother failed to meet her burden to show abuse occurred; rather, she was "clearly focused on issues of custody and visitation." The court reiterated its admonishment to Mother to not "interfere with" or "frustrate Father's ability to have visitation with [Daughter]."

### 3. July 30 Hearing and October 19 FOAH

On July 30, the court heard the parties' competing requests for relief. The hearing was reported, and the reporter's transcript is in the appellate record. Mother appeared in pro. per.; Father appeared with counsel.

Father's counsel began by addressing Father's RFO, Mother's failure to comply with the court's visitation orders, and the court's numerous adverse rulings against Mother.

Mother disputed Father's claims. In the course of arguing, she repeatedly talked over the court despite being admonished repeatedly not to do so.

24

The court prefaced its ruling by stating it had "taken extensive testimony," "heard extensive argument," and "reviewed the papers." Generally, the court stated it "continues to find that [Mother] is not as credible as [Father]," and "that she's doing everything she can to frustrate . . . his parenting time with [Daughter] and to coach [Daughter] and turn . . . her against [Father]."

On Father's RFO, the court modified Father's visitation and ordered that Daughter's school and medical records reflect her legal name.

The court denied without prejudice Father's requests to sanction Mother and declare her a vexatious litigant. The court stated it was "very mindful of all of the numerous filings that [Mother] has made, most of which . . . were not meritorious," but the court found Father failed to comply with the procedural requirements to declare her vexatious. The court admonished Mother "on the record . . . that if she does file another meritless motion, the Court will set a hearing to determine whether she should be deemed a vexatious litigant."

The court denied Mother's request to transfer the case. The court found that because it "is well aware of this case," a transfer "would not be . . . in keeping with judicial economy." The court also found that Mother was "attempting to forum shop because she's unhappy with some of the rulings in this court."

The court documented its ruling in a minute order and subsequent FOAH entered October 19, 2020.

## B. Discussion

## 1. Judicial Bias

In her appellate brief, Mother repeatedly—more than 30 times— accuses the family court of stigmatizing her. We interpret this accusation as

asserting that the court was biased against Mother.  So construed, the claim fails because Mother did not properly assert it in the family court or on appeal.

First, Mother forfeited her judicial bias claim by failing to file a disqualification motion in the family court.  (See Code Civ. Proc., § 170.3, subd. (c)(1) [a party who believes a judge is required to disqualify himself or herself must file a disqualification motion in the trial court "at the earliest practicable opportunity after discovery of the facts constituting the ground for disqualification"]; *Kern County Dept. of Child Support Services v. Camacho* (2012) 209 Cal.App.4th 1028, 1038 ["We conclude that appellant's disqualification arguments are forfeited by his failure to raise them below."].)  Although Mother sought to transfer the case based, in part, on her belief she could not receive a fair trial in the current court, this was insufficient to preserve the issue for appeal because Mother never invoked the disqualification statutes.  (See *Moulton Niguel Water Dist. v. Colombo* (2003) 111 Cal.App.4th 1210, 1218 [noting Code Civ. Proc., § 170.3 is the "statutory procedure to litigate the issue" of judicial bias].)

Second, even if Mother properly raised the issue in the family court, she forfeited it by failing to seek appellate review via a petition for writ of mandate, which is the exclusive appellate remedy.  (See Code Civ. Proc., § 170.3, subd. (d) ["The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate . . . ."]; *Yolo County Dept. of Child Support Services v. Myers* (2016) 248 Cal.App.4th 42, 50-51 ["statutory motions to disqualify . . . are not appealable orders and may be reviewed only by a writ of mandate"]; *Roth v. Parker* (1997) 57 Cal.App.4th 542, 548-549 [appellant forfeited a nonstatutory claim of judicial bias by "fail[ing] to seek writ review"].)

26

Finally, even if Mother had properly preserved and presented her judicial bias claim, it would fail on the merits. Mother bases her claim, in essence, on the fact the family court repeatedly ruled against her. However, a " ' "trial court's numerous rulings against a party—even when erroneous— do not establish a charge of judicial bias, especially when they are subject to review" ' " on appeal. (*Arave v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (2018) 19 Cal.App.5th 525, 541; see *Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 589 ["Numerous and continuous rulings against a party are not grounds for a finding of bias."].)

## 2. Rulings in the Challenged Order

Mother asserts a variety of challenges arising from the court's October 19, 2020 FOAH pertaining to the July 30, 2020 hearing. However, she has forfeited them because she did not present them under clearly identified headings (see *Opdyk*, *supra*, 34 Cal.App.4th at p. 1830, fn. 4) or "in a manner that . . . make[s] them susceptible of rational evaluation" (*Dahms*, *supra*, 174 Cal.App.4th at p. 719).

Even if Mother had not forfeited her challenges, we conclude—to the extent we are able to discern distinct arguments in her brief—they would fail on the merits, in any event.

For example, Mother complains again that the court did not send the parties to FCS mediation before the July 30 hearing. However, as we have already explained, because the parties had already been to FCS mediation, the court was not required to send them again. (See *Green*, *supra*, 213 Cal.App.3d at p. 25.)

Mother also complains that the family court refused to hear her motions at the July 30 hearing and "refus[ed] to review evidence [she] presented." The appellate record refutes this claim. The family court

expressly stated it was hearing Mother's "motion to transfer the case" and "motion to exercise parental rights," and that it "has reviewed the papers."

Mother contends the family court "violate[d] [her] right and opportunity to be heard" by granting Father's ex parte request to hear his motion for sanctions/vexatious litigant status on shortened notice on July 30. Even assuming Mother lacked notice of the ex parte hearing, Mother has not explained how she was prejudiced inasmuch as the court denied Father's motions.

In another claim regarding lack of notice, Mother maintains the court's July 30 rulings resulted from her alleged violations of the February 21, 2020 rulings, of which she claims to have never been notified. However, the appellate record shows Mother was on notice of the court's rulings because she was represented by counsel at the hearing and the court provided her with a copy of the February 21 minute order at a later hearing.

In the conclusion section of her appellate brief, Mother asks us to review de novo the family court's denial of her request to transfer the case to the east division. She argues de novo review is appropriate because "the issue of personal jurisdiction is a question of law" when the facts are undisputed, which she contends is the case with respect to her relocation to east county. This challenge fails for several reasons. First, Mother has not cited any authority to support it. (See *Delta*, *supra*, 48 Cal.App.5th at p. 1075.) Second, *personal jurisdiction* is not at issue because Mother submitted to the court's jurisdiction by filing this action. (*Nobel Farms, Inc. v. Pasero* (2003) 106 Cal.App.4th 654, 658 ["By choosing a particular forum, plaintiff is considered to have voluntarily submitted to the court's jurisdiction 'for all purposes for which justice to the defendant requires his presence.' "].) Third, transfers between divisions of the same superior court are discretionary. (See

Code Civ. Proc., § 402, subd. (b) ["A superior court *may* transfer an action or proceeding filed in one location to another location of the superior court," italics added]; see also *Fontaine v. Superior Court* (2009) 175 Cal.App.4th 830, 836 ["The standard of review for an order granting or denying a motion for a change of venue is abuse of discretion."].)  Mother has not addressed her transfer request under the appropriate standard of review, nor has she addressed the family court's findings with respect to judicial economy and forum shopping.  (*Cape Concord Homeowners Assn. v. City of Escondido* (2017) 7 Cal.App.5th 180, 193 [" 'we will affirm a judgment or order if it is correct on any theory of law applicable to the case' "].)  Thus, Mother has not shown the court abused its discretion by denying her motion to transfer.

Mother also revives her claim that the family court failed to make the required findings under section 3044.  As noted, however, Mother has not provided an adequate appellate record to support this claim.  (See *Jameson*, *supra*, 5 Cal.5th at p. 609.)

Mother raises two issues in her appellate brief that she did not raise below.  First, she requests that "any civil or criminal contempt hearings arising from the [challenged orders] be made moot."  Second, she requests that Father's counsel "be barred from all future work on this case."  These challenges fail because Mother neither raised them in the family court (see *Archer v. Coinbase, Inc.* (2020) 53 Cal.App.5th 266, 274 ["the issue is forfeited because plaintiff did not raise it in the trial court"]), nor supported them with any citations to legal authority or the appellate record (see *Delta*, *supra*, 48 Cal.App.5th at p. 1075).

Finally, Mother makes several factual assertions about the parties' current custodial status and whereabouts.  Mother has not supported the assertions with citations to the appellate record indicating the facts were

before the family court at the time of its ruling. (See *Delta*, *supra*, 48 Cal.App.5th at p. 1075; *AREI II Cases* (2013) 216 Cal.App.4th 1004, 1021 ["It is a fundamental rule of appellate procedure that our review is limited to the record before the trial court at the time it made the challenged ruling."].)

### 3. Rulings Not Appealed

In making her judicial bias claim, Mother cites several adverse rulings issued before the July 21, 2020 hearing. For example, with respect to the March 10 hearing on her March 9 ex parte request regarding Daughter's health, Mother asserts she "was not permitted by the court to speak on th[e] issues . . . because the court threatened [her] with criminal/civil contempt of court . . . ." Regarding her March 10 DVRO application, she accuses the family court of "all but rubber-stamp[ing] . . . denial of this request" and "simply never read[ing]" her supporting evidence. And as to the July 15 hearing on Mother's June 22 DVRO application, Mother maintains the court erroneously excluded evidence on hearsay and other grounds. Mother has not properly raised these challenges on appeal.

First, Mother's notices of appeal do not identify any of these orders. "[T]he notice of appeal . . . defines the scope of the appeal by identifying the particular judgment or order being appealed." (*Morton v. Wagner* (2007) 156 Cal.App.4th 963, 967.) " 'We have no jurisdiction over an order not mentioned in the notice of appeal.' " (*In re J.F.* (2019) 39 Cal.App.5th 70, 75.)

Second, to the extent these orders were independently appealable as postjudgment orders (see Code Civ. Proc., § 904.1, subd. (a)(2) [postjudgment orders are appealable], (a)(6) ["an order . . . refusing to grant . . . an injunction" is appealable]; *Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 332 [an order denying a DVRO is appealable]), Mother forfeited appellate review by failing to independently appeal them (see Code Civ. Proc., § 906

30

["The provisions of this section do not authorize the reviewing court to review any decision or order from which an appeal might have been taken."]; *In re Baycol Cases I and II* (2011) 51 Cal.4th 751, 761, fn. 8 ["California follows a 'one shot' rule under which, if an order is appealable, appeal must be taken or the right to appellate review is forfeited"]; *In re Marriage of Weiss* (1996) 42 Cal.App.4th 106, 119 [same]).

Finally, Mother has not met her appellant's burden to provide an adequate record and legal citations showing prejudicial error. (See *Jameson*, *supra*, 5 Cal.5th at p. 609; *Delta, supra*, 48 Cal.App.5th at p. 1075.) As to the March 10 hearings on Mother's ex parte request and DVRO application, Mother has not provided reporters' transcripts to substantiate her claims as to what happened at the hearings. And as to the July 15 hearing on her June 22 DVRO application, Mother has made no attempt to explain why the court erred by excluding evidence on hearsay grounds.[14]

---

[14] Mother's testimony at the hearing about statements Daughter made, when offered to establish the truth of Daughter's statements, is classic hearsay. (See Evid. Code, § 1200, subd. (a); *Hart v. Keenan Properties, Inc.* (2020) 9 Cal.5th 442, 447 ["Hearsay is an out-of-court statement offered to prove the truth of its content."].)

## IV.  DISPOSITION

The orders are affirmed.

HALLER, J.

WE CONCUR:


HUFFMAN, Acting P. J.


DO, J.