Filed 8/11/22  Baiocchi v. Ford Motor Co. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BRIAN BAIOCCHI, | |
| Plaintiff and Appellant, | G059143 |
| v. | (Super. Ct. No. 30-2018-00989431) |
| FORD MOTOR COMPANY, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from an order of the Superior Court of Orange County, Deborah C. Servino, Judge.  Affirmed.  Motion to augment record granted in part.

Law Offices of Jim O. Whitworth and Jim O. Whitworth for Plaintiff and Appellant.

Horvitz & Levy, Lisa Perrochet, Jason R. Litt, Shane H. McKenzie; Sanders Roberts, Justin H. Sanders and Sabrina C. Narain for Defendant and Respondent.

\*          \*          \*

Brian Baiocchi appeals from an order denying his motion for an award of attorney fees against Ford Motor Company. The trial court denied the motion because (1) Baiocchi failed to give sufficient statutory notice of the hearing, and (2) he had previously accepted the $10,000 fee award offered as part of Ford's statutory offer to compromise.

We find no error in the court's ruling. Baiocchi fails to acknowledge the lack of sufficient notice for his motion, which operates as a concession of the point. The court's determination that Baiocchi accepted the $10,000 fee amount offered by Ford is supported by substantial evidence.[1] We therefore affirm.

**FACTS**

Baiocchi filed a complaint against Ford alleging a claim under the Song-Beverly Consumer Warranty Act (Civ. Code, § 1790 et. seq., the Song-Beverly Act)).

In April 2019, Ford served Baiocchi with an offer to compromise pursuant to Code of Civil Procedure section 998 (the 998 offer), which was promptly accepted by Baiocchi's counsel, Jim Whitworth.

The pertinent terms of the 998 offer were:

"1. Ford will pay [Baiocchi] $27,000.00 which constitutes a statutory buyback on the basis of calculation provided by counsel for Plaintiff . . . .

"2. Ford will additionally pay Plaintiff's attorney's fees, expenses and costs in the amount of $10,000.00 or, *should the $10,000.00 be refused*, Ford is willing to allow the Court to determine, based on a noticed motion filed pursuant to Civil Code section 1794(d), the amount of attorney's fees, expenses and costs reasonably incurred by

---

[1] Baiocchi has also moved to augment the clerk's transcript he designated in support of this appeal. His motion is granted as to exhibits 1 and 6-12, but denied as to exhibits 2-5, which are not relevant to any issue argued in his opening brief.

2

Plaintiff's counsel in the commencement and prosecution of this action, as provided by Civil Code section 1794(d). In ruling on Plaintiff's fee motion, and except as otherwise provided in this paragraph, the fees, expenses and cost amount shall be calculated as if Plaintiff was found to have prevailed in this action under section 1794(d) as of the date of this is Statutory Offer, except that (1) *Ford shall not be liable for a multiplier greater than 1.00*, and (2) Plaintiff may recover for fees and costs reasonably and actually incurred in bringing such a fee/cost motion. Ford will pay the attorney's fees and cost amounts determined by the Court within 30 days of notice of the Court's ruling on same.

[¶] . . . [¶]

"5. Plaintiff will surrender the subject vehicle with clear title, free and clear of all liens and encumbrances . . . . Plaintiff will deliver the subject vehicle to Ford on a date, time and place mutually agreeable no later than 45 calendar days after the parties' counsel has accepted the Statutory Offer. Within seven days of the delivery and surrender of the subject vehicle, Ford will send the settlement check payable to Plaintiff as discussed in paragraph 1, by overnight mail to Plaintiff's counsel.

"6. *Plaintiff will file a Request for Dismissal, with prejudice, when* the subject vehicle is surrendered, the Plaintiff's attorney's fees discussed in paragraph 2 have been resolved *and the settlement check to Plaintiff's counsel, if any, is tendered and cleared the normal banking cycle*." (Italics added.)

On May 28, 2019, the scheduled trial date, the court issued a minute order which indicated the case appeared to be settled so the trial date was vacated. The court set an Order to Show Cause re: Dismissal on Settled Case (OSC) for June 7, 2019.

On May 31, 2019, Ford delivered to Whitworth a check in the amount of $24,003, which represented the total settlement amount of $37,000—including the $10,000 in attorney fees—minus the $12,997 that Ford had paid directly to Baiocchi's lender to pay off the balance of his car loan. Whitworth deposited the check which was made out jointly to his law firm and Baiocchi.

3

The completion of the settlement was nonetheless delayed because the parties could not agree on a procedure for Baiocchi to sign the vehicle surrender documents. Ford's counsel appeared at the OSC hearing and explained to the court "that the settlement check, including fees, had been delivered to Plaintiff's office and Ford was merely waiting for Plaintiff to surrender the subject vehicle." Whitmore did not appear at the hearing, instead sending a special appearance attorney who had no knowledge of the status of the vehicle.

The Court continued the OSC hearing to July 19, 2019, and ordered "counsel from the Law Offices of Jim O. Whitworth to appear in person or telephonically at the . . . hearing" and to "provide status of surrendering the vehicle pursuant to the settlement agreement."

At the July 19 continued hearing, a special appearance attorney again appeared on Baiocchi's behalf. The attorney informed the court that Whitworth was engaged in trial and had not provided him with information about the status of surrendering the vehicle. The court again continued the OSC to September 20, 2019, adding an order to show cause regarding monetary sanctions against Whitworth; the court once again ordered Whitworth to appear in person or telephonically at the hearing.

On September 18, 2019, Whitworth submitted a declaration in which he apologized for his nonappearance on July 19, 2019. Whitworth's declaration also stated he intended to file a fee motion pursuant to the 998 offer—despite having cashed the settlement check that included the $10,000 for fees and costs. Whitworth appeared telephonically at the September 20 hearing; the court ordered sanctions in the amount of $300 against the law offices of Jim O. Whitworth for counsel's noncompliance regarding its prior orders. The OSC re dismissal was again continued to November 22, 2019.

When the parties appeared at the OSC hearing on November 22, Whitworth informed the court that surrender of the vehicle had been completed. He also informed the court he still intended to file a motion for attorney fees. The court continued the OSC

4

again to January 10, 2020, and ordered Baiocchi to "pay the continuance fee and give notice."

At the January 10 hearing, the court noted Whitmore had stated in November that he intended to file a motion for attorney fees, but he had not done so. Whitworth responded by requesting another continuance of the OSC, stating he "intends to file a Motion for Attorney Fees by this Friday." Both the court and Ford wanted the motion to be heard before the next OSC hearing, which was scheduled for February 21, 2020.

Whitworth did not file his motion by the end of that week. Instead, he filed it on January 24, designating a reserved hearing date of February 14. The period between January 24 and February 14 is fewer than the 16 court days mandated in Code of Civil Procedure section 1005, subdivision (b). Whitworth served the motion on Ford via e-mail that same date, which was also short of the required notice period (16 court days plus two calendar days for e-mail service). (Code Civ. Proc., §§ 1005, subd. (b), 1010.6, subd. (a)(4).)

When Whitworth served his motion, he asked Ford to stipulate to shorten time for the hearing. Ford declined to do so. A week later, on February 1, 2020, Whitworth offered to stipulate to a continuance of the hearing; Ford again refused to stipulate.

Baiocchi's motion sought an award of $119,654 in fees and costs based on "actual time expended," and a "multiplier of no less than 1.50 or $59,827.00" for a "total award of $179,481.00."

Ford's opposition argued the motion should be denied as moot because Ford had already paid the $10,000 fee specified in the 998 offer, and because service of the motion was untimely. Ford also claimed Baiocchi failed to meet his burden of proof to demonstrate an entitlement to the requested fees.

5

According to Ford, Baiocchi's counsel indicated in correspondence leading up to the 998 offer he would accept the $10,000 in fees and he never communicated any rejection of it. Ford argued Whitworth accepted the payment, including the $10,000 attorney fee amount, when he deposited the check sent by Ford.

In Baiocchi's reply in support of the motion, Whitworth denied he had ever been willing to accept the $10,000 sum certain for attorney fees and claimed instead the court had been told "[a]t every OSC" that a fee motion would be filed. Whitworth similarly disputed the court's minute order from the most recent OSC, reflecting he had promised to file the fee motion by the end of that same week. He asserted he represented only that he would try to do so, while warning the court he had a scheduled trial date in another case that "was in the way."

Whitworth also claimed he filed the fee motion "at the soonest possible time" given the press of work in his other case and stated he chose the hearing date to accommodate the court's and Ford's desire that the motion be set before the next OSC. Counsel did acknowledge his notice period for the motion was "short 2 court days," but suggested Ford had been given the option to solve that problem by stipulating either to shorten time or continue the hearing date.[2]

Baiocchi's ex parte application for an order shortening time to hear the fee motion, or in the alternative, to continue the hearing date was filed on February 11 and set for hearing on February 13. Ford opposed the ex parte, arguing the effort was untimely. Ford explained Baiocchi's counsel initially stated he would be seeking ex parte

---

2   None of these contentions was supported by evidence. The only evidence supporting the reply is a declaration by Whitworth that "[t]he facts I refer to in the reply brief are accurate. Nothing stated in the opposition is completely accurate. Certainly, sending a check for PLAINTIFF does not equate to accepting fees rejected numerous times." Whitworth did not deny depositing the check that included the $10,000 fee payment.

6

relief before Ford's opposition was due—which would have benefitted both parties—but he failed to do so.

The court denied the ex parte application, noting Baiocchi failed to demonstrate diligence in seeking ex parte relief.

The next day the court denied the attorney fee motion for two reasons. First because the motion was made on insufficient notice, and second because under the terms of the 998 offer, Baiocchi had accepted, rather than refused, the $10,000 fixed sum for his fees.

With no other issues remaining, the court also held the hearing on the OSC re dismissal and ordered the entire action dismissed.

## DISCUSSION

1.    *Standards on Appeal*

Baiocchi claims his opening brief presents seven issues. However, he develops only one—i.e., whether the court erred in denying his attorney fee motion—into an appellate argument.

As set forth in California Rules of Court, rule 8.204(a)(1)(B), a party's brief must "[s]tate each point under a separate heading or subheading . . . , and support each point by argument and, if possible, by citation of authority." As stated in *Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179, the "[f]ailure to provide proper headings forfeits issues that may be discussed in the brief but are not clearly identified by a heading." (See *Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830-1831, fn. 4 [litigants must "'present their cause systematically and so arranged that those upon whom the duty devolves of ascertaining the rule of law to apply may be advised, as they read, of the exact question under consideration, instead of being compelled to extricate it from the mass'"].)

7

Thus, "[i]n order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286–287.) Because the appellate court is not required to search the record on its own seeking error, "'if a party fails to support an argument with the necessary citations to the record, . . . the argument [will be] deemed to have been waived.'" (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246.)

In this case, Baiocchi's opening brief includes complaints about events that occurred during the course of the trial court proceedings, including the court's imposition of sanctions against him on a couple of occasions; none of these complaints are further developed. They are therefore waived.

2.      *The Denial of Baiocchi's Attorney Fee Motion*

Baiocchi's contention that the trial court erred in denying his fee motion appears to be grounded primarily on two assertions: first, that a plaintiff who prevails under the Song-Beverly Act is entitled to an award of reasonable fees; and second, that there is no evidence he received any such award.

Baiocchi ignores the court's first ground for denying his attorney fee motion, i.e., that he filed the motion with insufficient notice. Because the court's ruling is presumed to be correct on appeal, the appellant has the affirmative burden to demonstrate that denial of his motion on that ground was error. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) Baiocchi's failure to argue that point operates as a concession. [3]

But even if Baiocchi had challenged that aspect of the court's ruling, Ford correctly points out that the decision to shorten time was within the court's discretion.

_____

[3]      Baiocchi acknowledges in his brief that the court "may fix the amount of statutory attorneys' fees 'upon noticed motion.'"

8

(Code Civ. Proc., § 1005, subd. (b).) It was not obligated to shorten time in the absence of a showing of good cause. We find no evidence of any such showing in our record.

Indeed, although the record demonstrates Whitworth was aware the fee motion was late by the time he filed and served it, he nonetheless proceeded. While he asked Ford to stipulate to an order shortening time, he took no action when Ford refused. Instead, the ex parte was scheduled the day before the hearing on the fee motion, more than a week after Ford filed its opposition. The court's finding that Baiocchi failed to act with diligence was correct.

Counsel's only justification for his failure to file and serve the motion with sufficient notice before the reserved hearing date—the culmination of a months-long course of delay—was that he had been too busy with other matters. As he explained in appellant's opening brief: "Plaintiff's counsel is buried with work. Adding fee motions makes things worse. Some offices may be staffed to add motion work. Plaintiff's counsel's office is not. When a case settles, the focus is the next trial and the other cases. Not fee motions! It is very hard to find the time to deal with fee motions."

This is essentially the same justification Whitworth offered to the trial court for his failure to comply with an explicit court order that he, or someone from his office with knowledge of the case status, appear at the continued OSC hearing. According to counsel, he had another obligation on the date of the continued hearing, and the court had no right to censure him for that. Counsel is wrong. If a litigant ignores a court order, or a required statutory notice period, he or she is assuming a significant risk of adverse consequences. We find no abuse of the court's discretion in finally imposing such consequences here.

Baiocchi's other arguments fare no better. While he is correct that the prevailing plaintiff in a Song-Beverly Act case is entitled to an award of reasonable fees (Civ. Code, § 1794, subd. (d)), we reject his assertion that counsel received no fee award in this case. As the court made clear in its ruling, its second ground for denying the fee

9

motion was that Baiocchi had already accepted the $10,000 in attorney fees included in Ford's 998 offer.

Baiocchi claims there is "no evidence" to support Ford's argument that he accepted the full $37,000, including attorney fees, stated in its 998 offer. We cannot agree. Ford demonstrated, in opposition to Baiocchi's motion, that it paid $24,003 to Baiocchi and Whitworth jointly, and paid $12,997 directly to the lender on Baiocchi's vehicle, in settlement of the case. That adds up to $37,000. During oral argument, all counsel agreed to these numbers.

Baiocchi nonetheless argues "[t]here is no evidence of emails, letters, or words of any kind where Plaintiff's counsel said we accepted $10,000.00" and no evidence that he "even knew there were fees paid for $10,000.00 until [Ford's counsel] tried to argue it to oppose the fee motion."

Baiocchi's acceptance of the $10,000 attorney fee offer can be inferred from his negotiation of the check which, when combined with the amount paid to his vehicle lender, clearly included that additional sum. Baiocchi does not deny awareness of Ford's direct payment to the lender. In any event, a reasonably attentive attorney would be aware of the amount(s) paid in settlement, and whether the overall payment was proper.

Because the evidence was sufficient to support the trial court's conclusion that Baiocchi had accepted payments that included the $10,000 in attorney fees offered as an option under Ford's 998 offer, we find no error in its denial of his attorney fee motion.[4]

---

[4]    Baiocchi also asserts that the trial court erred because it "refused to award 'reasonable' attorney fees and instead reached for [a] number out of the sky." Given that the $10,000 fee amount was taken directly from Ford's 998 offer, and the court's rationale was that Baiocchi had accepted the compromise amount as his fee award, the assertion appears misplaced.

## DISPOSITION

The order is affirmed.  Ford is to recover its costs on appeal.


GOETHALS, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


SANCHEZ, J.

11